THE ANDERSON-NEWCOMB COMPANY *et al. v.* THE CITY OF HUNTINGTON *et al.*

(CC 567)

Submitted September 2, 1936. Decided September 8, 1936.
(Written opinion filed September 15, 1936)

*H. L. Ducker,* for plaintiffs.

*J. Frank Eaton* and *E. L. Hogsett,* for defendants.

KENNA, JUDGE:

This suit was brought in the Circuit Court of Cabell County by the Anderson-Newcomb Company, a corporation, and others, against the City of Huntington, its mayor, clerk and director of public safety. The purpose was to procure an injunction inhibiting the defendants from enforcing a consumers' sales tax of one per cent under the terms of an ordinance adopted by the City of Huntington on the 15th day of July, 1936. The defendants appeared and filed their demurrer to the bill of complaint which was overruled, and, upon the joint application of the parties, the trial chancellor certified to this court the questions arising upon the sufficiency of the bill.

The ordinance before us is in all essential respects the same as the ordinance of the City of Bluefield that was before this court in the case of *Kresge Co.* v. *City of Bluefield,* 117 W. Va. 17, 183 S. E. 601. As in the *Bluefield* case, the tax to be collected under the ordinance is "for the privilege of engaging in the business of selling tangible personal property at retail, and of dispensing certain selected services defined in section 6 of this ordinance * * *." It is not contended here, however, as it was in the *Bluefield* case, that this language brings the tax provided for in the ordinance within the definition of license taxes that the city is authorized by its charter to lay. The main contention in this case is that the city is authorized to lay a consumers' sales tax under the terms of section 6 of chapter 161 of the Acts of the Second Extraordinary Session of 1933 (the charter of the City of Huntington) granting to the city, among other powers, the power "to provide revenue for the city and appropriate the same to its expenses." The further contention is advanced in justification of the ordinance that Code, section 10, article 4, chapter 8, as amended by chapter 66 of the Acts of the Legislature of 1935, which contains

practically the same language as that quoted from the city charter, in any event confers the power in question.

Counsel for the city contend that in order to give any meaning at all to the phrase "to provide revenue for the city," it is necessary to adopt the definition of the word "revenue" as found in Webster's New International Dictionary, which is: "The annual or periodical yield of taxes, excises, customs, duties, rents, etc., which a nation, state or municipality collects and receives into the treasury for the public use; public income of whatever kind." According to this definition of the word and according to the contention of counsel, the legislature has granted to the City of Huntington the right to collect "public income of whatever kind" to the full extent that lay within the legislative power, including the right to provide a consumers' sales tax.

On the other hand, counsel for the plaintiffs contend that since the clause in question as it appears in section 6 of the city charter, immediately follows the enumeration of several specific powers of taxation which are granted to the city, a rule analogous to that of *ejusdem generis* must be applied and the general clause restricted by the specific enumeration. The language in question is as follows: "* * * to levy taxes on persons, property and licenses; to license and tax dogs and other animals, and regulate, restrain, and prohibit them and all animals and fowls running at large; to provide revenue for the city and to appropriate the same to its expenses; * * *." Counsel point out that to give the clause in question the meaning contended for by the City of Huntington and to say that by the use of the word "revenue" the legislature vested the City of Huntington with the same powers of taxation that it could exercise, robs the specific enumeration of taxing powers contained in this section of the charter of all effect and meaning. Counsel for the City of Huntington reply that to fail to accord to the word "revenue" the meaning they contend for, robs that word of all meaning in this connection.

The position of counsel for the plaintiff is that the specific enumerations of taxing powers granted to the

City of Huntington control the general provision granting the city the power to provide revenue. This construction renders the general clause practically without meaning. The position of counsel for the city is that the general clause grants to the city all of the taxing powers that the legislature could grant to it. This position renders the specific enumerations of taxing power practically meaningless.

It is likely that the truth lies between these divergent constructions, and that the legislature meant, considering the context, to use the word "revenue" in the sense of the aggregate of all of the money that the city is empowered to collect—comprehending the avails of taxes after the power to tax has been exercised—not the taxing power itself. This conforms to the definition of the word "revenue" from Webster's New International Dictionary relied upon by counsel for the city and also conforms to the immediate context in which the word appears, the clause empowering the city of provide revenue being immediately followed by the words "and to appropriate the same to its expenses," an expression plainly contemplating an aggregate yield from taxes and other sources. The power to provide revenue means simply the power to provide an income, and that power may be exercised by the levying of the specific taxes enumerated in the charter. It can, of course, be urged that in giving the word "revenue" this meaning we are depriving the entire clause of all usefulness, since the city would of necessity have the power to provide an income as an incident to its power to levy specific taxes, and, having the power to provide the income, would of necessity have the power to disburse it. It may be conceded that this is so. But that objection is no more weighty than the objection that can be urged against the position of either counsel in this case, the one urging that the specific enumeration is practically without meaning and useless, and the other that the general clause is in the same category. But it is not necessary to a decision that we should determine exactly what the legislature did mean by the

language under consideration. If it lacks clear meaning, either express or by implication, we cannot hold that it is sufficient to confer a taxing power.

On the basis of the foregoing discussion, we think it has been demonstrated that the legislative purpose in using the language quoted from the charter of the City of Huntington cannot be said to be clear. We are therefore of the opinion that the grant of the general authority to provide revenue confers no taxing power beyond those specifically enumerated in the charter.

We are of opinion that the foregoing discussion of the language quoted from the city charter is applicable also to the language relied upon by counsel for the city contained in section 10, article 4, chapter 8 of the Code, as amended by chapter 66 of the Acts of the Legislature of 1935. Counsel for the City of Huntington urge that the language of the section just referred to—"to provide a revenue for the town and appropriate the same to its expenses, which power shall include the power to tax dogs," —must be construed as a general grant of taxing power to all municipalities adopting the provisions of chapter 8 of the Code, because nowhere else in the general law is the right to levy a property tax conferred upon municipalities. Counsel urge that Code, section 3 of article 7 of chapter 8 deals with the power of municipalities to lay a tax upon land as a power already granted, and that the grant of that power can be found only in the language quoted from article 4, section 10, Code. It seems to us that it is just as cogent to say that the power in municipalities to lay a tax upon land within their corporate limits arises by necessary implication from the provisions of section 3, article 7, chapter 8.

The charter of the City of Huntington contains the following language: "* * * and to impose a tax upon all subjects of taxation, under the several laws of the state, all of which taxes shall be uniform as to class with respect to persons and property within the jurisdiction of the said city *and shall only be levied on such property,*

*real, personal and mixed, and on capital, on which the state imposes a tax: * * *.*"  This language is not relied upon in this case as conferring the powers contended for by counsel for the city, doubtless for the reason that the identical language was passed upon in the case of *S. S. Kresge Co. v. City of Bluefield,* 117 W. Va. 17, 183 S. E. 601, and it was there held that the power to lay a consumers' sales tax was not conferred upon the city by the use in its charter grant of the language quoted.  In the *Bluefield* case, the court felt that the language "shall only be levied on such property, real, personal and mixed, and on capital, on which the state imposes a tax:" so limited the grant as to exclude from its provisions the power to levy a consumers' sales tax, and felt in addition that the grant of the power to a municipality "to impose a tax upon all other subjects of taxation, under the several laws of the state" would, under the rule of strict construction applicable to a grant of the taxing power, of necessity be restricted to laws of the state in effect at the time of the legislative grant of the charter power. Since the state had no consumers' sales tax at the time of the adoption of the charter under consideration in the Bluefield case and since the same situation prevails here, the language cannot be held to confer that right upon the municipality.  We advert to this point in the *Bluefield* case for the purpose of amplifying its discussion. It will be noticed that the syllabus in that case is enlarged upon by the syllabus herein in order to notice the fact that the taxing power may be granted to a municipality by necessary implication.  See the discussion in *Water Co. v. Town of Welch,* 64 W. Va. 373, at page 377, 62 S. E. 497.

For the reasons stated, we are of the opinion that the bill of complaint herein is sufficient, and that the action of the trial chancellor in overruling a demurrer thereto must be affirmed.  The question certified is accordingly answered.

*Affirmed.*