J. G. BALDWIN, *et al,*

*v.*

THE CITY OF MARTINSBURG, *et al.*

(CC 756)

Submitted October 5, 1949. Decided December 6, 1949.

514

*Martin & Seibert, Clarence E. Martin, Jr.,* for plaintiffs.

*J. O. Henson, Whiting C. Faulkner, Robert M. Steptoe,* for defendants.

FOX, JUDGE:

This is a suit in equity instituted by J. G. Baldwin and numerous other persons, firms, corporations, citizens and taxpayers of the City of Martinsburg, against the City of Martinsburg, a municipal corporation, Carl Wellinger, its Mayor, and J. Frank Seibert, Recorder, the purpose

of which is to obtain a decree declaring. invalid certain ordinances adopted by the council of the City of Martinsburg, imposing a privilege tax on certain classified businesses and occupations carried on in said city; and providing for the assessment and collection of such taxes, and penalties for the violation of the terms thereof. The case comes to us upon certification of certain rulings of court on pleadings filed in the suit, made on May 7, 1949. We docketed the case for hearing on such certification on July 26, 1949.

On September 28, 1948, an ordinance was adopted by the council of the City of Martinsburg imposing the tax mentioned above. It would seem to be unnecessary to go into detail as to what this ordinance provides. Suffice to say that it imposes a classified privilege tax upon persons engaged in manufacturing; the business of selling property; furnishing public service or utilities; the business of contracting; making industrial loans; operating amusements; the business of collecting incomes from the use of real or personal property; and in general provides for the collection of such taxes, with provision for penalties for failure to make returns or to pay taxes. It is provided that the taxes imposed should be a debt due the City of Martinsburg, and be the personal obligation of the taxpayer, and a lien upon the property used in the businesses or occupations upon which the taxes were imposed; provides that taxes may be collected by suit or distraint; and makes failure to file a return, or pay taxes, a misdemeanor, for which, upon conviction, a fine or imprisonment might be imposed by the proper municipal authority. The ordinance provides that:

"By virtue of Chapter 3 Acts of the 1947 Legislature, Extraordinary Session, all taxes levied pursuant to the authority of the statute shall be in full force and effect as of the first day of July, 1948, that date being the first day of the [then] current fiscal year. This ordinance shall expire on June 30, 1949. Any ordinance or parts of any ordinance in conflict with the provisions of this ordinance are hereby repealed."

The bill of complaint in this cause was filed at December Rules, 1948, and alleges the adoption of the ordinance mentioned above. It attacks the same on the grounds that, prior to its adoption, the council of the city had not at any time estimated the amount of additional revenue needed for the government of the city; nor estimated the amount of additional revenue proposed to be raised by the enforcement of such ordinance, which the plaintiffs allege to be in direct conflict with the purposes and intent of Article 8 of Chapter 11 of the Code as amended; and that the said council had not, prior to the adoption of said ordinance, determined or stated for what purpose the revenue was proposed to be raised thereby; which was alleged to be in direct conflict with, and in violation of, the provisions of Sections 25 and 26 of Article 8, Chapter 11 of the Code, as amended.

The bill then alleges that in the month of August, 1948, as required by law, the council of the City of Martinsburg estimated the amount of taxes necessary to be levied for the current fiscal year beginning on the first day of July, 1948, to meet the estimated cost of municipal government for said year, which estimate was certified by the recorder of the city, published as required by law, and thereafter used as a basis for levies upon the real, personal and public utility property of the city as required by Sections 14 and 14a, Article 8, Chapter 11 of the Code, as amended, which levies were thereafter extended upon all such property in said city, including that of the plaintiffs, and were estimated to produce a large sum of money, to-wit, $48,-144.43. It is also alleged that the total estimated expenditures by the city for the aforesaid fiscal year were $165,-949.43, of which amount it was estimated that $117,801.00 would be derived from indirect revenues, including $39,-000.00 thereof from excise taxes, and including $13,500.00 to be raised from licenses, leaving to be raised by levies on real and personal property the sum of $48,144.43 aforesaid. There is filed with the bill a copy of the estimate aforesaid, as Exhibit "B", and the ordinance aforesaid is likewise filed as an exhibit with the bill and designated Exhibit "A".

The bill then alleges that after the preparation and approval of the estimate aforesaid, and the assessment and extension of levies thereon, the said municipal council was without authority to levy and impose additional taxes, such as those imposed by the ordinance, aforesaid, filed with the bill as Exhibit "A", for the reason that it would amount to expenditure of public funds of the municipality in contravention of the provisions of the statute law of this State, Code, 11-8-14 as amended. It is alleged that for said reasons the ordinance aforesaid was invalid and in plain violation of the statute; contrary to the Constitution of the State; that the assessment of the taxes provided by the ordinance would operate as an irreparable wrong and injury to plaintiffs; and that they are entitled to have the enforcement of the said ordinance enjoined and restrained. The prayer of the bill is that the defendants be enjoined and restrained from imposing the taxes provided for in said ordinance; and be enjoined and restrained from taking any steps for the collection of the taxes imposed thereby; and that said ordinance be decreed to be void, invalid and unenforceable, and for general relief.

On January 3, 1949, the City of Martinsburg appeared in the case, and demurred to plaintiff's bill assigning five grounds: (1) That there was no provision in Chapter 11, Article 8 of the Code which required an estimate under said Article, prior to the adoption of an ordinance imposing a privilege tax, as contained in the ordinance exhibited with the bill; (2) that the estimate required by Chapter 11, Article 8 of the Code be made in August of each year as the basis for the levying of property taxes, was designed solely for use as to property, and was in no way related to privilege taxes authorized by Chapter 3, Acts of the Legislature, 1947, Extraordinary Session; (3) that the inhibition of taxes, without allocation to some specific purpose, covered the imposition of taxes on property, and for general purposes, and if so, the provisions of Sections 25 and 26 of Article 8, Chapter 11 of the Code were inapplicable; (4) that the accuracy of the estimate made in

518

August, 1948, as required by law, prior to the levy for property taxation may not be attacked collaterally; and (5) on other grounds apparent on the face of the bill of complaint.

On the 25th day of February, 1949, the plaintiffs filed their amended and supplemental bill of complaint, by which they allege that on the 28th day of December, 1948, at a special session of the council of the City of Martinsburg, there was adopted an ordinance filed with said amended and supplemental bill, as Exhibit "C", which, so far as can be determined by the record, is the same ordinance as that adopted September 28, 1948, except that Section 18 thereof is made to read as follows:

"By virtue of Chapter 3, Section 13-b, Acts of the 1947 Legislature, Extraordinary Session, this ordinance is hereby declared to be urgent and necessary for the immediate preservation of the public peace, health and safety and shall be in full force and effect on and after January 1, 1949, and shall continue in full force and effect until repealed or amended. Any ordinance or parts of any ordinance in conflict with the provisions of this ordinance are hereby repealed."

And there is added to the ordinance, Section 19 in the following language:

"That the ordinance providing for the raising of additional revenue by tax upon the privilege of engaging in certain occupations and upon the privilege of making sales of property; and by a similar tax upon the gross earnings of public service companies and of other companies and persons not derived from the sales of property; to provide for the assessment and collection of such tax and to provide penalties for the violation of the terms hereof, heretofore imposed by ordinance adopted by the Council of The City of Martinsburg, W. Va., on September 28, 1948, and the amendment thereto passed on September 30, 1948, be and the same is hereby repealed as of midnight December 31, 1948."

The amended and supplemental bill then alleges the facts relating to the estimate and levy aforesaid, made in the

month of August, 1948, and alleges the invalidity of the ordinance of December 28, 1948, by reason thereof. The amended and supplemental bill then alleges, upon information and belief, that the taxes imposed by said ordinance were intended to restore to different and various funds of the city money which said council had illegally and improperly removed therefrom; and to pay debts incurred by said municipality and to purchase equipment for various departments, all of which were not included in the estimate aforesaid; and that if there was any emergency existing in the fiscal affairs of the city, it was created by the defendants by improvident, invalid and illegal administration of the financial affairs of the city. It is alleged that the taxes imposed, by the ordinance of December 28, 1948, would be in excess of the amount which said council had entered of record as needed to meet the alleged financial emergency, to-wit, the sum of $86,220.59. Also, that the preparation, publication and certification of the estimate filed in August, 1948, was in every respect fraudulent, and not a · true and accurate statement of the financial status of the municipality; and again alleged that the council of the said city was without authority to levy and impose any additional taxes upon the taxpayers thereof, particularly the plaintiffs, beyond those provided for in the said estimate; or to accept or disburse the same, because such act would involve the expenditure of public money in violation of Sections 25 and 26 of Chapter 11, Article 8 of the Code, as amended. The amended and supplemental bill then attacks the provisions of the ordinance of December 28, 1948, so far as it imposes penalties upon those persons who failed or refused to pay the taxes imposed; and alleges that the said ordinance was invalid, and in plain violation of the statute and the Constitution of the State, and would amount to an irreparable wrong and injury to the plaintiffs; and ends by asking that the said ordinance be decreed to be void, invalid and unenforceable.

On February 25, 1949, the City of Martinsburg appeared and filed its demurrer to the amended and sup-

plemental bill aforesaid, in which it sets up the same matters as those contained in its demurrer to the original bill, and adds thereto the following:

"That the repeal of the first municipal gross sales or privilege tax as of December 31, 1948, and the enactment of the second municipal gross sales or privilege tax as of January 1, 1949, did not effect or in any manner change, alter, abrogate and repeal the taxes or any other penalties, interest or other provisions of the first mentioned tax."

And further:

"That the City of Martinsburg is not prohibited by law or by its existing Charter from enacting the tax complained of."

On April 8, 1949, the defendants tendered and had filed their joint and separate answer to the original and amended and supplemental bill of complaint filed in the case in which they say:

"Respondents admit that on the 28th day of December, 1948, at a Special Session of the Council of the City of Martinsburg, West Virginia, an ordinance was adopted in accordance with the allegations set forth in Paragraph 11 of complainants' Amended and Supplemental Bill and respondents further admit that Exhibit "C" filed with said Amended and Supplemental Bill of Complaint is a true and correct copy of the Ordinance adopted at said meeting; respondents further aver that the Council of the City of Martinsburg, at Special meetings called and held pursuant to the Charter provisions of the said City of Martinsburg, W. Va., on March 8, 1949, and March 12, 1949, introduced and properly passed an Ordinance amending and re-enacting Section Eighteen of the Ordinance adopted December 28, 1948, making said Ordinance operative as of the 1st day of the current fiscal year, to-wit: July 1, 1948, and each year thereafter. * * *"

The minutes of the meetings, of March 8 and 12, 1949, were attached to said answer and asked to be read as a part thereof. The answer denied that the plaintiffs were

relieved of payment of any of the taxes imposed by previous ordinances, and averred that under the amendment of March 12, 1949, petitioners were liable for the taxes imposed retroactive to the first day of July, 1948. On the same day, plaintiffs appeared and moved to strike the answer of the defendants on the ground that it was not responsive to the bill, and on the further ground that it alleged new and affirmative matter not proper to be set up in said answer. On the same date they tendered their demurrer to the said answer on the grounds: (1) That the municipal council of the City of Martinsburg had no right to make the ordinance designated as Exhibit "C" retroactive to the first day of July, 1948; (2) that the amendment to Section 18 of said ordinance constituted an ex post facto law, and made the defendants guilty of a crime, and subject to fine and imprisonment, for the nonpayment of a tax part of the liability for which accrued prior to the amendment to said section set forth in the answer as having been made on March 12, 1949; (3) that the ordinance having become effective on January 1, 1949, for taxes accruing thereunder after July 1, 1949. the said council was without authority, after the passage thereof, to change the tax year and make the taxes assessed retroactive to July 1, 1948; (4) that the amendment of March 12, 1949, constitutes a repeal of the ordinance of December 28, 1948; (5) that if the said amendment did not repeal said ordinance, it contains more than one subject in violation of Article 24 of the Charter of the City of Martinsburg; (6) that the title of the amended ordinance of March 12, 1949, does not contain a clearly expressed title of the subject matter and therefore violates Article 24 of the Charter of the City of Martinsburg; and (7) that there was no ordinance authorizing the expenditure of revenue collected under said ordinance retroactive to July 1, 1948, and therefore no taxes could be assessed thereunder. The motion to strike, and the demurrer aforesaid, were overruled, and on April 23, 1949, the plaintiffs were ordered to file a second amended and supplemental bill of complaint, touching matters contained in said answer, and on said date the plaintiffs filed their second amended and

supplemental bill, in which they take note of the ordinance of March 12, 1949, aforesaid, filed with the record as Exhibit "D", and aver that both the ordinance of December 28, 1948 and the ordinance of March 12, 1949, designated respectively as Exhibits "C" and "D" were void, for reasons set up in the original bill of complaint and the amended and supplemental bill of complaint; and for the further reason that said ordinances were not referred to a committee prior to the passage thereof, as provided in Article 24, Section 38, of the charter of the City of Martinsburg; were not read in open council at the regular meeting of the council, and spread upon the minutes thereof, and not there and then signed by the mayor; also that the ordinance of March 12, 1949, was void and invalid because in violation of the Constitution of the United States, and the Constitution of the State of West Virginia, in that it deprives the plaintiffs of property without due process of law, because it thereby constitutes an ex post facto law when read in conjunction with the ordinance of December 28, 1948, and because the title to the ordinance of December 28, 1948 was ambiguous, inconclusive, confusing and referred to more than one subject, in contravention of Article 24 of the charter of said city; and because there has been no ordinance passed or enacted by the council authorizing the expenditure or appropriation of revenue sought to be collected by the said ordinances. It prays for the same relief as that prayed for in the original and first amended and supplemental bill. Upon the filing of said second amended and supplemental bill, and on the same date, the defendants demurred thereto on the same general grounds as their demurrer to the original and first amended and supplemental bill; and further demurred to the allegation in the second amended and supplemental bill covering the matter of reference to a committee, the signing of the ordinance by the mayor, and the allegation of lack of due process, and avers that if the penalty provisions of the ordinance be treated as ex post facto legislation, they are severable under the provisions of Section 17 of said ordinance, and does not invalidate the entire ordinance. The defendants answered the said

second amended and supplemental bill by reaffirming their answer theretofore filed. Their answer reasserts the ordinance of March 12, 1949, and denied that either that ordinance, or the one of December 28, 1948, were void, and averred that the latest ordinance was referred to a committee before passage, read in open council at the next regular meeting, and spread upon the minutes of the next regular meeting of the council, and then and there signed by the mayor in the presence of the council.

At this stage of the litigation, the trial court submitted three separate written opinions which are made a part of the record. We are somewhat at a loss to apply these written opinions to the pleadings in the case. It would appear from the reading of the opinions that the trial court was of the opinion that the ordinance adopted on December 28, 1948, which was made effective as of January 1, 1949, was valid only as an ordinance becoming effective on the first day of the following fiscal year, to-wit, on the first day of July, 1949; and further that in its opinion the amendment to that ordinance, adopted on March 12, 1949, was in fact a reenactment of the ordinance originally adopted on September 28, 1948, which, by its terms, made the tax imposed effective and operative as of July 1, 1948, the theory of the court being, as expressed in said opinions, that under the provisions of Chapter 3, Acts of the Legislature, 1947, Extraordinary Session, taxes levied thereunder could only be made effective as of the first day of the fiscal year which, under Code, 2-2-4, is the first day of July of each year. Further, the court appeared to be of the opinion that the ordinance of March 12, 1949, which it held reenacted the original ordinance aforesaid, was valid and enforceable as of the first day of July, 1948.

Carrying out the opinions of the court, an order was entered on May 7, 1949, which, after bringing the case on for hearing, and the pleadings set out above, makes the following holding:

"And the Court having maturely considered of the matters of law arising upon the defendants demurrer to the bill of complaint herein, and the

first amended and supplemental bill of complaint herein, doth sustain said demurrer, except as to criminal penalties, and doth hold that the effective operative date of said ordinance does not begin until July 1st, 1949, as more fully appears from a written opinion which is hereby made a part of the record herein, to which action of the Court plaintiffs except.

"And the Court having maturely considered the matters of law arising upon the answer of the defendants, the motion to strike the same, and the demurrer thereto, doth hereby overrule the motion to strike said answer and doth hereby overrule the demurrer to said answer for reasons stated in a written opinion filed and hereby made a part of the record herein, to which action of the Court plaintiffs except.

"And the Court having maturely considered the matters of law arising upon the second amended and supplemental bill of complaint herein, and the demurrer of the defendants to said second amended and supplemental bill of complaint, doth hereby sustain said demurrer, except as to any criminal penalties which may have arisen under the said ordinance for reasons stated in a written opinion filed herein and hereby made a part of the record herein, but with leave to amend; to which action of the Court the plaintiffs except."

Then follows a certification of its rulings to this Court:

The matters arising on this record are certified to us under eighteen separate points of decision, but we think they may all be embraced under the following headings: (1) The power of the council of the City of Martinsburg to impose a privilege tax upon the businesses, occupations and callings covered by the ordinance here involved; (2) whether such a tax may, under our statute, and under general law, be made retroactive; (3) whether the procedural processes under which the said ordinances were adopted, as set out and required in the charter of the City of Martinsburg, were followed, and whether under such requirements the ordinances aforesaid were legally adopted; and (4) whether under Section 14 of Chapter 67 of the Acts of the Legislature, 1933, Second Extraordinary

Session, as amended by Chapter 132, Acts of the Legislature, 1939, and Sections 25 and 26 of Chapter 67 of the Acts of the Legislature, 1933, aforesaid, (Michie Code, 1949, 11-8-14, 25, 26) the council of the City of Martinsburg had the power, subsequent to the estimate and levy period provided for by Chapter 67 of the Acts of 1933, aforesaid, to impose a privilege tax and to make the same retroactive to a date prior to said levy and estimate period, and where neither the funds expected to be derived from such privilege tax, nor the expenditure thereof, had been taken into account in the estimate and levy provided for by general law, and by Chapter 67, Acts of the Legislature, 1933, Second Extraordinary Session, and now, with amendments, incorporated in Michie Code, 1949, as Article 8 of Chapter 11. In the pleadings here under consideration, the applicable statutes are referred to as contained within the Code, whereas, in fact, such statutes, as they now exist, were enacted by the Legislature subsequent to the adoption of the present official Code of 1931.

Under the first two headings mentioned above, we will deal with the power of the common council of the City of Martinsburg to lay a privilege tax, and to make the same retroactive. The naked power to lay a tax is one thing, and the question of whether or not legal steps are taken by the municipality to impose the tax to make it effective is another, and come within the last two headings mentioned above. Mere power to lay a tax does not carry with it the power to violate laws governing the imposition of the tax, or the procedure necessary to impose the same and make it effective. We will first deal with the power to lay the tax under the first two headings above and will discuss the same in the order mentioned.

In our opinion, the City of Martinsburg is vested with the power to impose classified privilege taxes under the provisions of Chapter 3, Acts of the Legislature, Extraordinary Session, 1947. That enactment reads:

"Whenever any business or occupation, upon which the state imposes an annual privilege tax

under article thirteen, chapter eleven of this code, as amended, is engaged in or carried on within any city, town or village of the state, the council or similar governing body may by ordinance, unless prohibited by existing law, impose a similar privilege tax thereon for the use of the city, town or village: *Provided, however,* That in no case shall the rate of such municipal privilege tax on a particular activity exceed the rate imposed by the state, exclusive of surtaxes.

"Any taxes levied pursuant to authority of this section may be made operative as of the first day of the current fiscal year and each year thereafter.

\* \* \*

"All acts, special or general, inconsistent with the provisions hereof are hereby repealed."

There can be no doubt that under Section 1 of Article X of our State Constitution, the Legislature may tax privileges, and may delegate that power to municipal corporations organized and existing under the laws of this State. Therefore the Act of 1947, aforesaid, was a constitutional delegation of the taxing power of the State to its municipalities, to be exercised within the provisions of existing constitutional and statute law.

While unimportant to the decision in this case, it has been suggested that independent of the statute quoted above, the City of Martinsburg had the right to impose this privilege tax under the provisions of its charter. The city was granted a revised special charter by Chapter 6, Acts of the Legislature, 1915, and the tax provisions thereof were subject to Section 1 of Article X of the Constitution of this State as then existing which provided, among other things, that:

"The Legislature shall have power to tax, by uniform and equal laws, all privileges and franchises of persons and corporations."

As distinguished from the Amendment of 1932, by which the section is made to read: "The legislature shall have authority to tax privileges, franchises and incomes of per-

sons and corporations * * *." eliminating any reference to "uniform and equal laws." This charter in Section 41 thereof provides that:

> "Whenever anything for which a state license is required to be done within said city, or within two miles of the corporate limits thereof, the municipal authorities, as herein provided, may require a city license to be had for doing the same, and may, in any case require from any person licensed, a bond with sureties and in such penalty and with such conditions as it may deem proper, and the Council, on notice, may revoke such license at any time if the condition of the said bond be broken."

Also that:

> "The municipal authorities may impose a license and assess a tax thereon on all wheeled vehicles for public hire, * * *.",

followed by the naming of numerous other businesses and occupations which might be made subject to the tax. In our opinion, the tax here involved cannot be sustained under the charter provisions aforesaid. In making this holding, we are not overlooking the case of *Mullens* v. *City of Huntington,* 117 W. Va. 740, 188 S. E. 120, wherein a privilege tax on the business of selling at retail was sustained under a charter provision which conferred upon the city the right "to license, tax, regulate or prohibit theatres * * * and other things or business on which the state does or may exact a license tax." Or the case of *Lewis* v. *City of Bluefield,* 117 W. Va. 782, 188 S. E. 237, wherein it was held that:

> "A license tax levied by the City of Bluefield on the business and privilege of selling coal and coke in that city, is included within the power conferred on the city by its charter to require 'city license for persons conducting and carrying on any business or vocation in the city for which the state may now or hereafter require license'."

The above quoted holding in the *Lewis* case was overruled by this Court in *Shulick-Taylor Co.* v. *City of Wheeling,*

130 W. Va. 224, 43 S. E. (2d) 54, and in that case it was held that:

"Code, 8-4-13, which delegates to municipalities the right to impose a tax on 'anything, for which a state license is required,' does not authorize a municipality to pass an ordinance providing for a gross sales tax on cigarettes, such being a privilege and not a license tax."

This case was decided on May 27, 1947, and Chapter 3, Acts of the Legislature, Extraordinary Session, 1947, was enacted and made effective on June 23, 1947, obviously to confer upon municipalities the power of taxation which the *Shulick-Taylor* case had denied to them. We are of the opinion, therefore, that the City of Martinsburg must rely for its power to impose the privilege tax here involved on the provisions of the 1947 legislative enactment aforesaid.

Chapter 3, Acts of the Legislature, Extraordinary Session, 1947, specifically provides that any taxes levied pursuant to the authority of that section might be made operative as of the first day of the current fiscal year and each year thereafter. This section, in unmistakable terms, confers upon municipalities the power to make the privilege tax therein authorized retroactive to the beginning of the then current fiscal year, provided other provisions of law are recognized and respected; and, in our opinion, also authorizes the making effective of such tax at the beginning of the succeeding fiscal year and thereafter. We do not consider this section as mandatory in the sense that a tax imposed at any time during the fiscal year must be made retroactive to the first day of that year. It would be strange indeed if a municipality, in the last month of the fiscal year, should look ahead and conclude that additional taxes would have to be imposed to meet the expenditures of the succeeding fiscal year, and not have the power during the month of June, or in some earlier month, to impose a tax to become effective on the first day of the succeeding fiscal year. In other words, a privilege tax imposed on the 25th of June of any year, need not neces-

sarily be made retroactively effective on the first day of the then current fiscal year, but the same may be imposed and made effective on the first day of July, the beginning of the new and succeeding fiscal year.

It appears to us too late to question the naked power of any taxing body to make its tax statutes and levies effective as of the first day of the fiscal year adopted by the Legislature to be such. In *Turkey Knob Coal Co.* v. *Hallanan,* 84 W. Va. 402, 99 S. E. 849, it was held that a statute enacted on March 31, 1919, and effective from passage, required corporations to pay net income tax for the then current fiscal year which began on July 1, 1918, and, in effect, made the tax retroactive for a period of almost nine months. And in *Laing* v. *Fox, State Tax Commissioner,* 115 W. Va. 272, 175 S. E. 354, it was held that a statute imposing privilege tax, enacted May 26, 1933, was operative from the beginning of the calendar year 1933. An appeal from this decision was dismissed by the Supreme Court of the United States, 293 U. S. 525. We do not deem it necessary to cite authorities for what has become well settled law in imposing indirect taxes, but the following federal cases may be of interest in this connection: *League* v. *Texas,* 184 U. S. 156; *Kentucky Union Co.* v. *Kentucky,* 219 U. S. 140; and *Billings* v. *U. S.,* 232 U. S. 261. It is under these holdings that the ordinance of March 12, 1949, making the ordinance imposing a privilege tax effective as of July 1, 1948, was a legal exercise of the taxing power under the provisions of Chapter 3, Acts of the Legislature, Extraordinary Session, 1947, provided such ordinance was not in conflict with existing law governing, in general, the imposition and levy of taxes of all kinds and descriptions.

We now come to the question of whether in enacting the ordinance of March 12, 1949, aforesaid, the council followed the procedure required by the charter of the city for the legal adoption of an ordinance by that body. Plaintiffs, by their second amended and supplemental bill, aver that such ordinance was not legally adopted, because the same was not referred to a committee prior to the

passage thereof, or a reference to the committee dispensed with; was not read in open council at the next regular meeting of the council, and spread upon the minutes thereof; and had not been signed by the mayor. Section 38 of Article 24 of the charter of the City of Martinsburg provides that all ordinances should be presented in writing, and not amended in passage so as to change the general purpose thereof; that no ordinance should be considered for final passage at the meeting at which it was introduced, nor unless the same should have been reported upon by committee, but that reference to committee might be dispensed with by the affirmative vote of three-fifths of the members of the council; it also provides that no ordinance should contain more than one subject which should be clearly expressed in its title, nor should any ordinance be passed other than upon a majority vote of all members elected to the council when the question is put upon its passage. It also provides that all ordinances passed should be spread at large upon the minutes, and at the next regular meeting to be read in open council, and that the mayor should sign said minutes, when found correct, in the presence of the council, and also for the recordation of the ordinance.

As will be noted above, the purpose of the ordinance, adopted March 12, 1949, was to change the effective date of what was supposed to be an existing ordinance, and to make the same effective at a different date, namely on the first day of July, 1948, instead of the first day af January, 1949. The section of the ordinance which fixes the effective date thereof was numbered 18, and the title of the March 12, 1949, ordinance was as follows:

"An ordinance to amend and reenact Section 18 of an ordinance providing for the raising of additional revenue by a tax upon the privilege of engaging in certain occupations and upon the privilege of making sales of property; and by a similar tax upon gross earnings of public service companies and other companies and persons not derived from the sales of property: to provide for the assessment and collection of such tax, and to

provide penalties for the violation of the terms hereof and to repeal the similar tax heretofore passed and amended as of December 31, 1948, which ordinance was adopted at a special meeting of the council of the City of Martinsburg held on December 28, 1948."

It is clear that the purpose of the act was to amend a single section of an ordinance theretofore adopted, and all the language which follows was merely descriptive of the ordinance which had been theretofore adopted. For this reason alone, we think the objection to the ordinance on account of its title is not well grounded. When we come to the requirement of the ordinance that same be referred to a committee, we concur in the opinion of the trial court that the fact that the ordinance was adopted by the unanimous vote of the elected members of the council, without reference to a committee, in effect, dispensed with such committee reference. We think the record shows that the ordinance was spread upon the minutes of the council and signed by the mayor. There was, in our opinion, substantial compliance with all of the charter provisions in respect to the adoption of an ordinance of the common council of the city, and we see nothing in its procedure which should be allowed to invalidate an ordinance otherwise legal and effective.

The next question goes to the very heart of this controversy, and grows out of the failure of the council to include the money expected to be realized from the privilege tax attempted to be imposed, and the expenditure thereof, in its budget estimate for the fiscal year beginning July 1, 1948. As is well known, under the provisions of Article 8 of Chapter 11 of the Code, as amended, all local tax bodies, including municipalities, are required in the month of August of each fiscal year to make up an estimate of receipts for the fiscal year, together with allocations of funds derived from all sources to be expended during that year. Admittedly, the City of Martinsburg did not include in its estimate, for the fiscal year beginning July 1, 1948, any of the receipts from any taxes which might be imposed subsequent to the date when the levy estimate was

made up and filed, and it is contended by the city that the inclusion of such receipts, and the allocation thereof to the needs of the city, in the estimate for that fiscal year was not necessary to make valid the privilege tax here involved. On the other hand, it is contended by plaintiffs that the failure to adopt the ordinance here under attack prior to the filing of said budget, with estimate of receipts and proposed expenditures, and the levying of property taxes based thereon, made illegal and void the ordinance of September 28, 1948, as well as the ordinance of December 28, 1948, and that of March 12, 1949. The principle involved extends to all of the said ordinances, because all of them were adopted subsequent to the date when the levy on real, personal and public utility property in the City of Martinsburg for the fiscal year 1948-49 was made.

We do not think there has been any time in the history of this State when the Legislature has not sought to impose upon counties, school districts and municipalities what is known as a "pay as you go" policy in respect to public expenditures. The people of this State, when they adopted each of our two Constitutions, and especially when they adopted the present Constitution, were alert to the danger of creating indebtedness, and the creation of indebtedness by the State was limited by the Constitution to the payment of existing indebtedness, and such as might be created by reason of casual deficits in the State's treasury. No indebtedness beyond those figures could be legally imposed except by a vote of the people. The same principle runs true as to counties, school districts and municipalities, and it has been at all times realized that that principle could not be carried into effect unless current expenditures were confined to current revenues, and that such result could not be obtained except by a system of estimate and planning. It may be true that no specific and detailed steps were taken to effectuate these purposes until the enactment of Chapter 9 of the Acts of the Legislature, Special Session, 1908, which enactment antedated the charter of the City of Martinsburg of 1915. We think it may be said that since 1908, this State, and particularly

its Legislature, has diligently pursued the aim of budget-
ing receipts and expenditures, in order that the books
might be balanced at the end of each fiscal year; that is,
that there should not be expenditures in excess of revenues
from whatever source derived. Section 4 of Chapter 28A
of the Code of 1916, applying to municipalities, required
that the common council of every municipal corporation,
at a session to be held on the second Tuesday in August
should make up an itemized statement of the conditions
of the fiscal affairs thereof including the amount due the
municipality; the amount that would become due and col-
lectible during the fiscal year from every source, except
the amount that would be produced from the levying of
taxes on property; the debts and demands owed by munici-
palities, and the debts and demands that would become
due and payable during the fiscal year, including interest
on all indebtedness or otherwise; and all other expendi-
tures under the several heads of expenditures to be made
and payable by the municipalities for the current year.
So it is that for more than forty years, the Legislature of
this State has required, in specific language, the filing of
an estimate of receipts and expenditures, from all sources,
on the part of municipalities for each fiscal year; and it
has clothed the State Tax Department with power and
authority to audit and examine the books of all taxing
units, for the purpose of securing compliance with the
statutes made in respect to the expenditures of public
funds. We need not go into detail as to all of the steps
taken towards this end, or with the successes and failures
of efforts to attain the ends sought. It is sufficient to say
that it has been, over this long period of time, the specific
policy of this State to enforce what has come to be known
as the budget system in the collection and expenditure of
public funds, and this policy has been applied with par-
ticular strictness to the subordinate divisions of the State
government as represented by the counties, school dis-
tricts and municipalities.

In November, 1932, the people of this State ratified what
is known as the tax limitation amendment to our Consti-

tution, the result of which was to limit the right of the State, and its subdivisions, to levy taxes in excess of certain prescribed limitations, and property was classified to bear different rates of levies within each class. The effect of this amendment was to greatly reduce revenues which could be derived by the State, counties, school districts and municipalities by direct taxes on real estate and personal property, and the property of utilities, and thereby forced a resort to the present tax system, under which, as respects the State and municipalities in particular, a large part of their revenues are derived from indirect taxes, among which are taxes upon the privilege of carrying on certain businesses. This is not true as to counties and school districts, because to a very large degree they still depend on levies on real, personal and utility property, plus State aid to the school districts. When we come to municipalities, we find that they now largely depend on various systems of indirect taxation, the details of which it is not necessary to state. The estimate made up by the City of Martinsburg of its receipts and expenditures for the fiscal year 1948 shows on its face that the estimated receipts of the city for that fiscal year, exclusive of sums which might be derived from property levies, aggregate $117,801.00, and the estimated expenditures for the said year were $165,945.43, leaving to be raised by levies on real estate and personal property the sum of $48,144.43. From this it appears to what extent the City of Martinsburg was required to depend on revenues outside of property taxes, to provide the cost of the activities carried on by the city, and accentuates the importance of an accounting with respect not only to money derived from levies on real estate and personal property, but from money derived from other types of taxes known as indirect taxes.

When the enabling legislation, necessary to make effective the tax limitation amendment, was adopted, it may be said that there was a tightening up attitude on the part of the Legislature; and by Section 14, Chapter 67, Acts of the Legislature, Second Extraordinary Session, 1933,

as amended by Chapter 132, Acts of the Legislature, 1939, (Michie Code, 1949, 11-8-14), it was provided:

"The municipal governing body shall, at the session provided for in section nine, ascertain the fiscal condition of the corporation, and make an itemized statement setting forth:

"(1) The amount due and the amount that will become due and collectible from every source during the current fiscal year except from the levy of taxes to be made for the year;

"(2) The interest, sinking fund and amortization requirements for the fiscal year of bonded indebtedness, legally incurred upon a vote of the people as provided by law, prior to the adoption of the tax limitation amendment;

"(3) Other contractual indebtedness, not bonded, legally incurred prior to the adoption of the tax limitation amendment, owing by the municipality;

"(4) All other expenditures to be paid out of the receipts of the municipality for the current fiscal year with proper allowance for delinquent taxes, exonerations, and contingencies;

"(5) The total amount necessary to be raised by the levy of taxes for the current fiscal year;

"(6) The proposed rate of levy in cents on each one hundred dollars' assessed valuation of each class of property;

"(7) The separate and aggregate assessed valuations of real, personal, and public utility property in each class in the municipality."

The sections following authorized the imposition of the levies on each class of property, within constitutional limitations, necessary to meet the balance existing between the proposed expenditures, and the amounts that would become due and collectable from sources other than taxes on property. By Section 25 of Chapter 67, aforesaid, it is provided that:

"Boards or officers expending funds derived from the levying of taxes shall expend the funds only for the purposes for which they were raised."

And Section 26 following provides that:

"A local fiscal body shall not expend money or incur obligations:

" (1) In an unauthorized manner;

" (2) For an unauthorized purpose;

" (3) In excess of the amount allocated to the fund in the levy order;

" (4) In excess of the funds available for current expenses."

We think it has been universally recognized that the purpose of these statutes, in their application to counties, school districts and municipalities, has been to compel accounting for all funds raised for public purposes in this State. The levy order mentioned in Section 26, quoted above, is, of course, the order which authorizes the imposition of a property tax to create a fund which, in connection with the fund derived from other sources, would take care of the proposed expenditures for the current year; but it is apparent to us that there can be no separation of the funds going into a municipal treasury, from whatever source derived, as respects the expenditures of such funds. The proposition is intended to be as simple as this: the governing body of a municipality assembles in August of the current fiscal year, and estimates what is necessary to be expended for the various municipal activities for the current year. It then estimates the amount of money it will receive from various sources, other than the levy on property located within the municipality. The money received from these various sources may be from licenses and from numerous other businesses, and when aggregated, and then deducted from the estimated expenditures there is developed the amount necessary to be raised by the levying of taxes on property. To say that the statutes respecting estimates are not intended to go beyond the sums of money raised from property taxes is to ignore the realities in connection with the intent and purposes of the budget system. A tax dollar derived from a license, or from a privilege tax, is the same

dollar as that derived from real estate or personal property; and the reason why one should be properly accounted for can be applied to the other. The two cannot be divorced. We must treat the statute as all embracing, and as requiring an estimate and allocation of funds for expenditures to be a part and parcel of the whole fiscal system, and not permit a separation of the two and, in effect, say as to one that rigid requirements be enforced, and as to the other that loose methods of expenditures be permitted, without any real accounting for expenditures made.

This has been the interpretation of these statutes during all the years they have been in existence. So far as we know, they have not been departed from in any substantial way. A municipality is required to make up an estimate as to how much it will spend for its fire department, police department, water department and various other activities of city government. Of course, in the very nature of things, these estimates cannot be completely accurate. Expenditures for one purpose may somewhat exceed the figure allocated for that purpose, while as to another fund the estimate may be too high. A certain liberality is permitted to prevail in the reallocation of funds by counties, school districts and municipalities, so long as the overall expenditures do not exceed revenues. The extent of this liberality is illustrated in the discussion of the question found in *Roane County Court* v. *Phillips,* 121 W. Va. 438, 4 S. E. (2d) 425. See also *Kenny, Director, etc.* v. *Webster County Court,* 124 W. Va. 519, 21 S. E. (2d) 385; and *Kenny, Director, etc.* v. *Preston County Court,* 124 W. Va. 534, 21 S. E. (2d) 680.

So far as we know, there is no authority under our statute, or otherwise, for the expenditure by a municipality of any sum of money unless such expenditure has been authorized by its inclusion in the budget estimate which is required to precede the laying of taxes on real and personal property. Such a thing as the imposition of a tax by a municipality after the levy period in August, and the expenditure of the receipts of such a tax without

reference to the budget estimate, is, as we understand, unknown to our law. And if such an expenditure cannot be made, then certainly there can be no sound basis for the imposition of a tax, the proceeds of which cannot be legally expended. This being true, the common council of the City of Martinsburg was without power to impose the privilege tax here involved, and make the same effective at any time during the fiscal year beginning July 1, 1948; and the ordinances which attempt to impose such tax are null and void, in so far as they impose such tax for the said fiscal year. Whether they are valid, as respects succeeding fiscal years, is a question not here present, and upon which we do not express an opinion.

It may be said that this ruling restricts the municipalities from adopting ordinances for the imposition of taxes to the period of time beginning on the first day of a given fiscal year, and ending with the estimate and levy period for that year. This is not necessarily true. Of course, a municipal council could adopt an ordinance after the beginning of the fiscal year, and before the levy period, which would impose a privilege tax, or other indirect tax, and make the same retroactive to the first day of the fiscal year, provided the estimated receipts from such taxes, and their proposed expenditures, were included in the estimate prepared for that year. This would not be out of line with the practice which is followed in the assessment of taxes upon real and personal property. For, as is well known, tax levies on such property are based upon valuations as of the first of the calendar year, and the levies are laid and made effective from the first day of the fiscal year, although not collectable until later, and not entirely collectable until near the end of the fiscal year. As we view the matter, there is nothing in the statute which would prevent a city council from adopting an ordinance imposing a privilege tax at any date during a fiscal year; but for reasons, well expressed by the trial court in the opinions filed, such a tax is an annual tax and can only be imposed for a fiscal year; and, as we think, if imposed during a fiscal year, and after the levy period,

it could not become effective until the first day of the next fiscal year. However, we see no reason why it should not be made effective at that date. Whether the taxes imposed can be collected in the succeeding fiscal year may depend on whether or not the revenues expected to be derived therefrom are included in the estimate of that year. As stated above, we are not in accord with the view that when a privilege tax is imposed under the 1947 Act of the Legislature, it must necessarily be made effective as of the beginning of the fiscal year in which it is imposed.

The mere power to lay a tax does not serve to by-pass or ignore general statutes in existence pertaining to the imposition of all taxes, and the accounting laws pertaining to the expenditures of public funds. We have, in effect, held in this opinion that the council of the City of Martinsburg had the power to enact an ordinance imposing privilege taxes on the businesses, occupations and callings covered by the ordinances here involved, and to make the same retroactive, subject only to the general provisions of law respecting the budget estimate heretofore discussed. We have also held that the defects, if any, in the procedure before the council, upon the adoption of the ordinance of March 12, 1949, did not effect its validity. But, we cannot permit this ordinance to become effective for the fiscal year of 1948, because of the failure on the part of the city to include the estimated returns from the tax imposed thereby, and its proposed expenditures, in the budget estimate for that fiscal year. In our opinion, if we should permit the ordinance to become effective for that year we would, in effect, endanger, if not destroy, the long established budget system in this State; because, if there is no budget control over public funds derived from indirect taxation which a municipality may impose, or the expenditures of money derived from such taxes, then we have lost the budget control over a majority of the expenditures which a city must make. For, as indicated above, more and more cities are looking to that type of taxation for the revenues to carry on their activities. If the City of Martinsburg may, in September, 1948, impose

indirect taxes on its citizens and expend the fund derived therefrom without reference to the estimate of expenditures set up in its budget for that year, we do not know of any power or control over the revenues so raised; and if it can do that for one year, it can do so for each succeeding year, by enacting these taxes on a year to year basis, making up its budget without reference to such taxes, and imposing them subsequent to the date when its regular estimate is filed. We do not think it was ever intended that any such system should be permitted to exist in this State. We do not assume that the City of Martinsburg, or any other municipality, would follow such a system, which would be in plain violation of the spirit of the budget system; but if it can do so in this case, it can do so in other cases, and other cities may follow its example. No detriment to the city can arise from holding it to strict conformity to the principles of our budget system of collecting and expending public funds, and the advantages are manifest.

We, therefore, reverse the ruling of the Circuit Court of Berkeley County, in so far as it permits the ordinance of March 12, 1949, to become effective as of the first day of July, 1948, and remand the case for further proceeding.

*Rulings reversed,*
*cause remanded.*