WILLIAM L. NEAL *et al.*
*v.*
THE CITY OF HUNTINGTON *et al.*
(No. 12696)

Submitted November 28, 1967.  Decided December 19, 1967.

*E. Henry Broh,* for appellants.

*W. Merton Prunty, Robert H. Burford,* for appellees.

CALHOUN, PRESIDENT:

This case is before this Court on appeal from a final judgment of the Circuit Court of Cabell County entered in a declaratory judgment action instituted in that court by William L. Neal, a physician, Edward M. Burkhardt, a dentist, and Norman E. Rood, an attorney, all residents, citizens and taxpayers of The City of Huntington, as plaintiffs, against The City of Huntington, a municipal corporation, and Edward A. Ewing, City Manager of The City of Huntington, as defendants, to determine the question of the validity of an ordinance enacted by the municipality to extend the operation of a certain tax so as to include persons engaged in professional activities as persons subject to the tax. For the sake of clarity and convenience, the parties will be referred to in this opinion as plaintiffs and as defendants, according to their designations in the trial court.

The defendants in the declaratory judgment proceeding have been granted an appeal to this Court from the action of the trial court in declaring the ordinance to be invalid as it relates to persons engaged in professional activities. After the appeal was

awarded, the defendants were granted leave to move to reverse the judgment of the trial court, pursuant to Code, 1931, 58-5-25, and Rule IX of the Rules of this Court. The case was submitted for decision upon the record made in the trial court and upon written briefs and oral argument of counsel.

The parties entered into a comprehensive stipulation of material facts in the trial court. The questions presented for decision are purely questions of law arising upon the undisputed facts in the light of certain provisions of statutes, municipal ordinances and the city charter.

Since 1921, statutes of this state have provided for a state privilege tax which is commonly referred to as the Business and Occupation Tax. These statutes, as amended from time to time, including a 1967 amendment, are found in Chapter 11, Article 13, Code, 1931, as amended. In 1947, there was enacted a statute authorizing municipalities to impose a similar tax upon businesses or occupations engaged in or carried on within the municipality. Code, 1931, 8-4-13b. A portion of that statute is as follows:

"Whenever any business or occupation, upon which the State imposes an annual privilege tax under article thirteen, chapter eleven of this Code, as amended, is engaged in or carried on within any city, town or village of the State, the council or similar governing body may by ordinance, unless prohibited by existing law, impose a similar privilege tax thereon for the use of the city, town or village: Provided, however, that in no case shall the rate of such municipal privilege tax on a particular activity exceed the rate imposed by the State, exclusive of surtaxes.

"Any taxes levied pursuant to authority of this section may be made operative as of the first day of the current fiscal year and each year thereafter."

In 1959, the legislature increased the rates of taxes imposed on the various classifications of businesses and occupations taxable under the state Business and Occupation Tax statutes, but made obvious its intent that such increased rates should not inure to the benefit of municipalities by enacting in 1959 a statute now appearing in Code, 1931, 11-13-25, as amended, which statute provides that "no city, town, or village shall impose a business and occupation tax or privilege tax upon occupations or privileges * * * in excess of rates in effect under this article on January one, one thousand nine hundred fifty-nine."

From its inception, the statute in question (Code, 1931, 11-13-2h, as amended,) has imposed a tax upon "every person engaging or continuing within this State in any service business or calling not otherwise specifically taxed under this law, * * *." Both before and after January 1, 1959, and until 1967, the words "service business or calling" were defined in Code, 1931, 11-13-1, as amended, as "all *non-professional* activities engaged in for other persons for a consideration, which involve the rendering of a service as distinguished from the sale of tangible property, but shall not include the services rendered by an employee to his employer." (Italics supplied.) Prior to January 1, 1959, the rate of the state tax for a service business or calling under Code, 1931, 11-13-2h, as amended, was 1% of the gross income of the service business or calling. Huntington's rate of taxation from its inception to and including the present time is 0.8% and hence less than the rate of the state tax prior to January 1, 1959.

In 1967, the legislature amended Chapter 11, Article 13, Section 1, by omitting the word "nonprofessional" from the definition of "Service business or calling." By reason of the 1967 amendment, the definition is as follows: " 'Service business or calling' shall include all activities engaged in by a person for other persons for a consideration, which involve the rendering of a

service as distinguished from the sale of tangible property, but shall not include the services rendered by an employee to his employer." The obvious purpose of the 1967 amendment was to omit from operation of the tax the exemption of professional activities, such as those in which the plaintiffs are engaged.

The 1967 amendment eliminating the word "nonprofessional" from the statute was enacted by the legislature on March 8, 1967, to take effect April 1, 1967. After the enactment of the 1967 statutory amendment, the City of Huntington amended its pertinent ordinance relating to its Business and Occupation Tax so as to make its definition of "Service business or calling" conform to the definition embodied in the statutory amendment, thereby eliminating the exemption of professional activities from taxation under the municipal Business and Occupation Tax. The validity of this ordinance, as amended in 1967, is questioned in the declaratory judgment action involved in this case.

The trial court emphasized a legal principle, also relied upon by counsel for the plaintiffs, which is summarized in the first point of the syllabus of *Hukle v. City of Huntington,* 134 W. Va. 249, 58 S. E. 2d 780, as follows: "A municipality has no inherent power to levy taxes; it can do so only by virtue of the authority delegated to it by the Legislature. Its powers are limited, and the statute vesting it with power to tax must be strictly construed and strictly followed; in construing the statute all doubts should be resolved against the city and in favor of the taxpayer." To the same effect see *State ex rel. Battle v. The Baltimore and Ohio Railroad Co.,* 149 W. Va. 810, 839, 143 S.E. 2d 331, 348; *Baton Coal Co. v. Battle,* 151 W. Va. 519, pt. 2 syl., 153 S.E. 2d 522. The principles thus stated are mere rules of construction to be employed in ascertaining legislative intent. Such statement of legal principles should not be construed to imply either a public policy or a legal policy in opposition to impo-

sition of taxes. The imposition of taxes is a legislative function. Courts are not permitted to concern themselves with the need for or wisdom of taxes properly imposed, but are obligated to recognize that proper taxes are essential to the maintenance of government.

"The rule that tax laws are to be construed strictly against the municipality and in favor of the taxpayer does not take precedence over other fundamental rules of statutory construction. The judicial construction should be in keeping with the natural and probable legislative purpose, and avoid conflict, and harmonize all the applicable provisions of the law on the subject, if possible. * * *" 16 McQuillin, Municipal Corporations (3d Ed. Rev.), Section 44.12, page 42. The following statement is made in 84 C.J.S., Taxation, Section 58b, pages 158-59: "While there is some authority to the contrary, the general rule is that statutes providing for taxation are to be construed strictly as against the taxing power in favor of the taxpayers. However, this principle must not be pushed so far as to defeat the legislative purpose by mere construction, but an interpretation of the statute must be given in accordance with its real intention and meaning, if that is clearly discoverable. * * *"

The trial court held that the municipal ordinance, as amended in 1967, violates the provision of Code, 1931, 11-13-25, as amended, which, as previously stated in this opinion, provides that no city, town or village shall impose a Business and Occupation Tax or a privilege tax under the provisions of Article 13 of Chapter 11 of the Code of 1931, as amended, "in excess of rates" in effect on January 1, 1959. The trial court, as stated in its written opinion, which is a part of the record before us, was of the opinion that "including in the amended Ordinance a great number of persons not heretofore taxed by the Ordinance in its original state is tantamount to changing the rates from zero to a substantial tax. Certainly insofar as the new people (professional) are concerned, this is making

rates 'in excess of the rates that were in effect on January 1, 1959'."

We cannot agree with this reasoning of the distinguished trial judge. We are of the opinion that the 1967 amendment of the statute and the subsequent amendment of the ordinance, by eliminating the word "nonprofessional", clearly displayed a purpose and intent merely to embrace an additional category of persons to be subject thereafter to the Business and Occupation Tax within the classification and definition of the phrase, "Service business or calling", as that phrase is used in the amended ordinance. The amendment of the ordinance dealt with persons taxable and not with a rate or with "rates" of taxation.

The trial court held that the ordinance, as amended, is invalid for the additional reason that it is in contravention of the provisions of Article VII, Section 2, of the Charter of The City of Huntington, a "home rule" charter, which was adopted on February 23, 1965. That charter provision is as follows:

> "*Taxing Powers Preserved.* This City shall have every power to tax, license, franchise and charge which it had immediately prior to adoption of this Charter, including but not limited to the taxing and licensing powers given to it by sections 6 and 33, Chapter 161 of the Acts of the Legislature of the State of West Virginia, 1933 Second Extraordinary Session. The City shall continue to impose and collect every tax, license, franchise, fee and charge which is being imposed by the City immediately prior to the effective date of this Charter, until the same is revised, modified or repealed by Council."

In relation to the charter provision quoted immediately above, the trial court, in its opinion, stated: "* * * This Court is of opinion to hold that all taxes in existence when the charter took effect are the taxes, and the only taxes, the City can impose. Any new taxes that were not in existence at the time the charter went

into effect (February 23, 1965) are not legally effective unless and until the *Charter* is revised, modified or repealed by the Council to include such taxes. It would appear that the B & O tax on professional people, attempted by the amended Ordinance of April 11, 1967, is a *new* tax, and not merely the broadening of a tax that was in effect on the effective date of the Charter.'' We are of the opinion that the trial court placed an unduly strict and unwarranted construction upon this provision of the charter and failed to construe this particular provision in relation to other pertinent statutes and other provisions of the charter.

It should be noted that Article VII, Section 2 of the charter deals with the taxing powers preserved. The clear intent and purpose of this charter provision is to preserve rather than to restrict the powers of the city to levy taxes. It preserves to the city the taxing powers ''which it had immediately prior to the adoption of this Charter, * * *.'' Neither by express language nor by any reasonable implication does it restrict the power of the city, after the effective date of the charter, to levy new taxes or to increase the rates of existing taxes. This provision of the charter expressly provides for power of the city to continue to impose every tax, license, franchise, fee and charge which was being imposed at the time the Charter was adopted ''until the same is revised, modified or repealed by Council.'' The trial court, in its opinion, evidently construed the words ''until the same is revised, modified or repealed by Council'' to mean until the charter is revised by the council. It is apparently conceded by counsel for the plaintiffs, tacitly at least, that the trial court erred in construing the quoted language to give power to the council to revise, modify or repeal the charter. It is obvious, we believe, that the words ''the same'', referred to existing taxes, licenses, etc., rather than to the charter.

In further reference to the trial court's holding that the city has no power or authority to impose taxes

which were not in effect when the charter became effective, reference is here made to Article I, Section 3 of the charter which, in part, is as follows:

> *"Powers of the city.* This city, incorporated under this municipal home rule charter, shall have *all* the powers *granted to municipal corporations* and to cities of its class by the constitution and laws of the State of West Virginia, *including but not limited to the powers granted by Chapter 8 and Chapter 8A of the official Code of West Virginia, as amended, together with all the implied powers necessary to carry into execution all the powers granted.* \* \* \**The enumeration of particular powers by this charter shall not be deemed to be exclusive,* and in addition to the powers enumerated herein or appropriate to the exercise of such powers, it is intended that the city shall have and may exercise all powers which, under the constitution of the State of West Virginia, or any amendments thereto, *or under the laws of the State of West Virginia, now or hereafter enacted,* it would be competent for this charter specifically to enumerate." (Italics supplied.)

Code, 1931, 8A-5-3, as amended, authorizes home rule cities in broad, comprehensive language to tax businesses, occupations or economic activities. The plaintiffs contend that the legislature has never granted The City of Huntington or any other municipality the authority to impose the tax in question. They argue that by the enactment of Code, 1931, 8-4-13b, as amended, in 1947, the legislature granted all municipalities within the state only the authority to impose a Business and Occupation Tax upon all activities taxed by the state at that time. It is contended that Code, 1931, 8-4-13b, as amended, is so written that only businesses being taxed by the state in 1947 which might thereafter begin business within a municipality may be taxed. We cannot accept this argument. It is clear that the legislature intended to permit the municipalities to tax the same subjects of taxation that were taxable by the state subsequent to 1947.

"The taxing power of a municipality depends upon legislative authority, expressed or necessarily implied." *The Anderson-Newcomb Co. v. The City of Huntington,* 117 W. Va. 716, syl., 188 S.E. 118. On the subject of strict construction of statutes relating to municipal taxation, the following language appears in 64 C.J.S., Municipal Corporations, Section 1983, pages 653-54: "On the other hand, the courts must not defeat the legislative intent by turning the language used from its natural and obvious meaning, nor are powers expressly granted or necessarily implied to be defeated or impaired by a strict construction, and, if a statute is capable of a reasonable construction upholding its constitutionality, such a construction will be favored over one having a different result." We are of the opinion that *The Anderson-Newcomb Co. v. The City of Huntington,* 117 W. Va. 716, 188 S.E. 118; *Kresge Co. v. City of Bluefield,* 117 W. Va. 17, 183 S. E. 601, and other similar cases cited by the plaintiffs, are distinguishable from the present case in that, unlike the present case, they involved taxes of doubtful validity and such doubts were in those cases properly resolved against the taxing authorities.

It is contended further in behalf of the plaintiffs that even if the ordinance in question is otherwise valid, it is without effect during the 1967-68 fiscal year. This question was not decided by the trial court because it was deemed unnecessary to do so in view of its decisions on other questions. The proposition asserted in support of this contention appears to be that the municipal levy estimate was approved prior to the effective date of the statutory amendment which the city asserts as its authority for adoption of the ordinance. We are of the opinion that this contention is without merit. The events in 1967 which are apparently uncontroverted and which give rise to this contention are listed in the defendants' brief chronologically as follows:

March 8: The legislature amended Code, 1931, Chapter 11, Article 13, Section 1, so as to eliminate professional activities from exemption from the Business and Occupation Tax.

March 27: The council ordered the proposed ordinance to be advertised.

March 27: The municipal levy estimate was submitted to the state tax commissioner for approval.

March 30: The state tax commissioner gave conditional approval of the city's estimate.

April 1: The state statute in its amended form became effective.

April 10: The ordinance in question was enacted by the municipal council.

April 18: An adjourned session of the municipal council was held for hearing objections to the levy estimate and to making the levy.

July 1: The municipal ordinance in question became effective under its provisions to that effect.

Relying upon *Baldwin v. City of Martinsburg,* 133 W. Va. 513, 56 S.E. 2d 886, the plaintiffs contend that the city prepared a levy estimate of anticipated revenues based on an ordinance which had not been adopted and which ordinance, if adopted at all, depended upon a statutory amendment that had not at the time become effective. Apparently the portion of the holding of the *Baldwin* case upon which the plaintiffs rely is summarized in the fifth point of the syllabus. In reply to this contention, counsel for the defendants asserts that, in order to correct the fiscal problem created by the *Baldwin* case, the legislature in 1963 enacted a statute which now appears as Code, 1931, 11-8-14b, as amended, and which statute is in part as follows: ''The governing body of any municipality may impose any tax not theretofore levied, or may increase any tax theretofore levied, and may make said tax

or increase effective as of the date of the adoption of the ordinance imposing or increasing said tax, or as of any date thereafter specified in the ordinance regardless of whether or not said tax or the increase thereof is included within the levy estimate for the current or ensuing fiscal year, * * *.'' It appears that the levy estimate was approved by the state tax commissioner on March 30, after the statute was enacted on March 8, and that the levy estimate was adopted by the city council on April 18, after the statute became effective on April 1. We are of the opinion, therefore, that the contention made in behalf of the plaintiffs in this connection is without merit.

For reasons stated, we hold that the ordinance in question is valid, and, accordingly the defendants' motion to reverse the judgment of the Circuit Court of Cabell County is granted.

Judge Haymond did not participate in the consideration and decision of this case.

*Motion to reverse granted.*