IN THE MATTER OF APPEAL AND
REVIEW OF THE ASSESSMENT OF
PROPERTIES OF U.S. STEEL CORP.,
*A Corp.*, IN MCDOWELL COUNTY, *etc.*

(No. 14244)

Decided July 15, 1980.

374

*Camper & Seay, C. Thomas Seay and Harry G. Camper, Jr., Welch, Love, Wise, Robinson & Woodroe and Charles M. Love,* for appellant.

*Wade T. Watson,* Prosecuting Attorney, for appellee.

NEELY, CHIEF JUSTICE:

The facts in this case are clear and undisputed. In 1976 the State Tax Commissioner's Office conducted a reappraisal of all industrial and coal mining properties in West Virginia. The purpose of the reappraisal was to insure fair, equal and uniform assessments in the taxation of similar properties and to update previous appraisals. *State Tax Commissioner's Manual for County*

*Assessors.* The Tax Commissioner's office appraised the property of the United States Steel Corporation in McDowell County at $17,176,480. After the Tax Commissioner's appraisal, the corporation filed a report as required by *W.Va Code,* 11-3-1 [1977] listing its properties in McDowell County and using the amounts set by the Tax Commissioner as the true and actual value of the property. The corporation's tax report conformed in its entirety to the State Tax Commissioner's appraisal. All other coal companies located in McDowell County also filed tax reports as required by the *Code,* but they returned their property at only fifty percent of the true and actual value as determined by the State Tax Commissioner's appraisal.

The County Assessor of McDowell County, Albert Falvo, admits that he knew that all of the reports were made in reliance on the State Tax Commissioner's appraisal and that he had received a copy of the Commissioner's appraisal of coal properties in McDowell County before making his assessment of U.S. Steel in 1976. Assessor Falvo, in reviewing the reports from all coal companies other than U.S. Steel, found that they had used fifty percent of the value as determined by the State Tax Commissioner's appraisal. As a result all of the reports from the other companies claimed a lower valuation than had been claimed in the previous year. In order to maintain the county's revenues, Assessor Falvo decided to assess all companies' property, other than U.S. Steel, at a uniform rate of eighteen percent over the value assigned by the companies on their returns. U.S. Steel claimed a lower assessed value than in the previous year, but valued its property at one hundred percent of the State Tax Commissioner's appraisal.

Assessor Falvo refused to accept U.S. Steel's valuation of its property, which he admittedly knew to be based on the State Tax Commissioner's recent appraisal, and he did not check the accuracy of the report by inspection; instead the Assessor relied upon the previous year's report filed by U.S. Steel. He fixed the assessed value of the U.S. Steel property in McDowell County at

$18,626,000. Thus, the Assessor levied a tax on U.S. Steel's property using an assessed value equal to one hundred and eight percent of its true and actual value as determined by the State Tax Commissioner, while the properties of all other coal companies in McDowell County were knowingly taxed using an assessed value equal to sixty-eight percent of their true and actual values as determined by the same report of the State Tax Commissioner.

The Assessor's action was upheld by the County Commission of McDowell County sitting as a Board of Equalization and Review. The decision of the County Commission was properly appealed to the Circuit Court of McDowell County which reversed the County Commission. After making extensive findings of fact[1] the court held that the Assessor had acted arbitrarily and capriciously in fixing the assessed value of U.S. Steel's property at one hundred and eight percent of its appraised value and that such assessment was unequal, not uniform, "clearly wrong, improper and erroneous." The circuit court ordered, however, only that the tax be reduced by eight percent, permitting the Assessor to levy

---

[1] The court found, *inter alia*, that U.S. Steel had relied in good faith upon the State Tax appraisal in making its report. Further, the trial court found that: the report conformed completely to the State appraisal; all companies had relied on the State appraisal, although all companies other than U.S. Steel had claimed a value equal to fifty percent of the State Tax appraisal; the Assessor recognized and accepted the State Tax appraisal as the basis of his assessments of all companies other than U.S. Steel, while he rejected the State appraisal for U.S. Steel; the Assessor made no effort to inspect or examine U.S. Steel's property in order to make an independent determination about the accuracy of its return based on the Tax Commissioner's report; the Assessor's fixing of the assessed value of U.S. Steel's property was based solely and entirely upon the previous year's report made before the State reappraisal and that such a method was not used in making any other assessment; and, in fixing all other assessed values the Assessor had followed a systematic plan of increasing the assessed values from fifty percent of the State appraisal by a uniform eighteen percent. Finally, and crucial to our limited holding in this case, the trial court conclusively found that there was a systematic plan of assessment which intentionally was *not* applied to U.S. Steel.

on an assessed value equal to one hundred percent of the appraised value. U.S. Steel appeals from that order of the circuit court, alleging a violation of *W. Va. Const.*, art. X, § 1 which provides "No one species of property from which a tax may be collected shall be taxed higher than any other species of property of equal value."[2] In this case U.S. Steel has introduced compelling evidence which rebuts any presumption of regularity in favor of the correctness of the assessment.

*W.Va. Code*, 18-9A-11 [1972] read *in pari materia* with *W.Va. Code*, 11-3-1 [1972] gives the Assessor discretion to set the assessed value of property between fifty and one hundred percent of the appraised value. *Tug Valley Recovery Center, Inc. v. Mingo County Commission,* ____ W.Va. ____, 261 S.E.2d 165 (1979).[3] *W.Va. Const.*, art. X, sec. 1 requires that the assessments be equal and uniform within the range allowed by the *Code. W.Va. Code*, 11-3-25 [1977] requires the circuit court to correct any erroneous assessments. It is urged, and we agree, that the circuit court in correcting the erroneous assessment did not go far enough to meet the mandates of *W.Va. Const.*, art. X, § 1.

---

[2] Appellant also argues persuasively that the action of the circuit court in setting the assessed value of their property at one hundred percent of the appraised value while allowing the assessed value to the other coal properties in the county to remain at sixty-eight percent of their appraised value denies them their right to equal protection and due process of law under the Fourteenth Amendment to the *Constitution of the United States.* Considering our disposition of this case on the basis of the *West Virginia Constitution* we need not reach the federal constitutional question presented.

[3] *Tug Valley* presented the situation where a taxpayer sued because a large taxpayer was not bearing an equal proportion of its burden of paying for social services. In that case we allowed a small taxpayer to sue to have the assessment against the delinquent large taxpayer increased. In the case *sub judice* a large taxpayer has sued to have its unequal assessment reduced. The remedies are not mutually exclusive but are rather opposite sides of the same coin. Both will result in an equitable tax scheme that meets the standard set by *W. Va. Const.*, art. X, sec. 1.

This Court considered the provisions of art. X, § 1 in detail in *In re Assessment of Kanawha Valley Bank*, 144 W.Va. 346, 109 S.E.2d 649 (1959). In that case the evidence established that the Assessor had fixed the assessed value of bank stock at one hundred percent of the appraised value while other personal property in Kanawha County was assessed at a lower rate. As in the case before us, the Assessor admitted the lack of uniformity and equality in the assessments. In reversing the circuit court's action upholding the unequal assessment of one hundred percent we said:

> Where there is a systematic plan to assess all property of a certain species at a particular percentum of its value, substantially less than a showing that there were sporadic variations to the plan of assessment will not deprive the owner of property of another species of his right to relief under the provisions of Section 1, Article X of the Constitution of this State, where the property of the latter was assessed at a substantially higher percentum of actual value than the approximate level of valuation of the other species of property of equal value. Syl. pt. 6, *Kanawha Valley Bank, supra* at 651.

As that principle applies where the assessment of property of different species varies substantially, it applies with equal if not more force where the variation is among parcels of property of the same species.

While it is true that unintentional, sporadic deviations from an established system are not a sufficient basis for reversal of an assessment, *see Bankers Pocahontas Coal Co. v. County Court*, 135 W.Va. 174, 62 S.E.2d 801 (1950), we find that in this case the treatment afforded U.S. Steel was more than a sporadic deviation from the system,[4] but rather a negation of the system. It would be

---

[4] Indeed there is evidence in the record of knowing, active discrimination against U.S. Steel. Commissioner Moore was quoted in the Welch Daily News as saying he would not vote "to cut any of this assessment one nickel.... Damn U.S. Steel and all the big businesses.... I ain't got a nickel (from U.S. Steel), that's why I

totally unacceptable to allow counties to use two systems of assessment, one for favored taxpayers and one for others.

This Court does not have the authority to fix assessments because such authority is vested by statute in the circuit courts. *Kanawha Valley Bank, supra.* Consequently we remand this case to the Circuit Court of McDowell County to fix the assessment in accord with this decision.

*Reversed and remanded.*

McGRAW, JUSTICE, *concurring:*

This case stands for the simple proposition that where the taxpayer can prove that he is the victim of "intentional discrimination" on the part of the assessor, whereby the assessor has knowingly permitted other taxpayers owning similar property to obtain assessments of their property at a substantially different value, he may require that his property be similarly assessed.

This decision does not alter the rule in *Tug Valley Recovery Center, Inc. v. Mingo County Commission,* ____ W.Va. ____, 261 S.E.2d 165 (1979), where we held that every person affected by the tax base could challenge improper tax assessments. Nor does it alter the assessor's statutory mandate, under penalty of removal, W. Va. *Code* 11-3-1, that: "All property shall be assessed . . . at its true and actual value."

Finally, the decision does not relieve the assessor, under penalty of removal, from carrying out his mandatory duty under W. Va. *Code* 18-9A-11, which requires: "The total assessed value in each of the four classes of property shall not be less than fifty percent or more than one hundred percent of the appraised valuation of each paid

---

can run my mouth." Such an attitude has no place in our law where all are to be afforded equal rights. The Assessor was aware from the beginning of what he was doing and his discrimination was knowing, deliberate and willful.

class of property." Had the other taxpayers in this case been assessed at less than fifty percent of their appraised value, the petitioner in this case would not have been entitled to relief, because their assessments would have been illegal and petitioner would not have been entitled to have its assessments adjusted downward against an illegal assessment.

I am authorized to state that Justices Harshbarger and Miller join with me in this opinion.