425 S.E.2d 186

**TOWN OF BURNSVILLE, a Municipal Corporation, Petitioner,**

v.

**Honorable Danny O. CLINE, Judge of the Circuit Court of Braxton County; Kwik–Pik, Inc., a West Virginia Corporation; Seventy–Niner, Inc., a West Virginia Corporation; and Roger M. Nettles, individually, and as Officer and Shareholder of Said Corporations, Respondents.**

No. 21227.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 8, 1992.

Decided Dec. 14, 1992.

---

Robert Reed Sowa, Sutton, for petitioner.

Joseph M. Wagoner, Haller & Wagoner, Weston, for respondents, Kwik–Pik, Seventy–Niner and Nettle.

BROTHERTON, Justice:

This case involves a petition for a writ of prohibition filed by the Town of Burnsville (Town) against the respondents, the Honorable Danny Cline, Judge of the Circuit Court of Braxton County, Kwik–Pik, Inc., Seventy–Niner, Inc., and Roger M. Nettle. The petition for a writ of prohibition was intended to prevent the respondents from obtaining information regarding the Business & Occupation tax (B & O tax) paid by other taxpayers in the Town of Burnsville.

The Town of Burnsville filed a lawsuit against the respondents, Kwik–Pik, Inc., and Seventy–Niner, Inc., in order to collect certain business and occupation taxes that the Town contends was owed to them by the respondents. The suit was based upon this Court's decision in *Town of Burnsville v. Kwik–Pik, Inc.*, 185 W.Va. 696, 408 S.E.2d 646 (1991). In that case, this Court ruled that Burnsville's B & O tax was constitutional and remanded the cases back to the circuit court for further proceedings.

Upon remand, the Town filed a motion for summary judgment, to which the respondents filed a motion to dismiss and answer which asserted that the B & O tax was being selectively enforced and prosecuted against them. The respondents also filed a motion for production and inspection in which they requested that the Town's B & O tax returns and other information of third-party taxpayers who were not party to this suit be made available to them for review. However, by order of March 4, 1992, Judge Cline agreed that the Town was selectively enforcing the B & O tax provisions against the respondent and permitted discovery of the Town's B & O tax returns. It is from that final order that the petitioner files this petition for a writ of prohibition, in an attempt to prevent Judge Cline from permitting the respondents to review those tax returns.

Article X, § 1 of the West Virginia Constitution guarantees that "taxation shall be equal and uniform throughout the State, and all property, both real and personal, shall be taxed in proportion to its value...." [1] It is well recognized in both State and federal law that tax rates, although different for different classes, must be equal and uniform within the individual class. In *Allegheny Pittsburgh Coal Co. v. County Commission of Webster County*, 488 U.S. 336, 109 S.Ct. 633, 102 L.Ed.2d 688 (1989), the United States Supreme Court ruled that the Equal Protection Clause of the United States Constitution is applicable in some taxation cases: "The Equal Protection Clause 'applies only to taxation which in fact bears unequally on persons or property of the same class.'" *Id.* at 343, 109 S.Ct. at 637, 102 L.Ed.2d at 697 (citations omitted). "The equal protection clause ... protects the individual from state action which selects him out for discriminatory treatment by subjecting him to taxes not imposed on others of the same class." *Id.* at 343, 109 S.Ct. at 637, 102 L.Ed.2d at 698 (citations omitted). The

---

**1.** In *Chicago Great Western Railroad Co. v. Kendall*, 266 U.S. 94, 45 S.Ct. 55, 69 L.Ed. 183 (1924), the United States Supreme Court found that in order to warrant an injunction against a collection of a tax because of unjust discrimination, it was insufficient that a mistake existed on the part of the tax officers, or that the court would have reached a different conclusion. The Court stated that there must be a clear and affirmative showing that the difference was an intentional discrimination and one adopted as a practice. Similarly, in *Kline v. McCloud,* 174 W.Va. 369, 326 S.E.2d 715 (1984), we held that under the equal protection clause of the United States Constitution and the similar clause in the State constitution, there was a requirement that the taxpayer/property owner must show that other property had been improperly valued and that the undervaluation was intentional and systematic.

Court concluded that the Equal Protection Clause allows the state to divide different types of property into different classes, which are each assigned an appropriate tax burden. The differing tax rates are proper as long as the division and resulting tax burdens are not arbitrary or capricious.[2]

■ In *Armco v. Hardesty*, 172 W.Va. 67, 303 S.E.2d 706 (1983), *rev'd* 467 U.S. 638, 104 S.Ct. 2620, 81 L.Ed.2d 540 (1984), this Court ruled that taxation must be uniform within individual classifications. Although the United States Supreme Court reversed the decision and held that the West Virginia B & O tax unconstitutionally discriminated against interstate commerce, syllabus point 5 of *Armco* remains valid:

> Section 1 of Article X of the West Virginia Constitution does not require that the same rate of business and occupation tax be applied to all classes of business activity and callings to which the tax is applied. The Legislature may prescribe different rates for different businesses and callings, but the rate of taxation must be uniform and equal within each classification.

■ This Court faced a similar situation in *Matter of U.S. Steel Corp.*, 165 W.Va. 373, 268 S.E.2d 128 (1980), where U.S. Steel Corp. alleged they were being assessed taxes on real property at a rate higher than other similarly situated companies. In holding U.S. Steel was the victim of improper discrimination in the assessment, we ruled that:

> Where there is intentional discrimination against a taxpayer by knowingly applying a different formula to the computation of its taxes from that generally used for all other taxpayers in similar circumstances, such discrimination cannot be excused as a sporadic deviation and the aggrieved taxpayer is entitled to have its taxes computed in the same

manner and on the same basis as the favored taxpayers.

*Id.* at syl. pt. 3. This case involves somewhat different facts, in that the respondents complain that similarly situated taxpayers pay no tax, rather than a reduced tax. Nonetheless, we believe that syllabus point 3 of *U.S. Steel* is analogous to this case. If the respondents can prove that they are being taxed at a different rate than other taxpayers in similar circumstances, then they are entitled to force the city to tax the other taxpayers at the proper B & O tax rate. Without access to the B & O tax returns, however, it is virtually impossible for the respondents to prove that the other similarly situated taxpayers have not paid B & O taxes. Thus, our next step is to review the confidentiality provisions of the West Virginia Tax Administration and Procedure Act to determine if there is a way for the respondents to view the B & O tax returns in question.

■ It is well recognized in this State that the West Virginia Freedom of Information Act is liberally construed. " 'The disclosure provisions of this State's Freedom of Information Act, W.Va.Code, 29B–101 *et seq.*, as amended, are to be liberally construed, and the exemptions to such Act are to be strictly construed. W.Va.Code, 29B–1–1 [1977].' Syllabus point 4, *Hechler v. Casey*, 175 W.Va. 434, 333 S.E.2d 799 (1985)." Syl. pt. 1, *The Daily Gazette Company v. Caryl*, 181 W.Va. 42, 380 S.E.2d 209 (1989). West Virginia Code § 29B–1–1 *et seq.* (1986) provides for the release of all public records to any person, unless otherwise expressly prohibited by section four of the Act. The general rule allowing disclosure, however, is subject to an exception for information otherwise "exempted from disclosure by statute." W.Va.Code § 29B–1–4(5) (1986). Thus, we

---

**2.** West Virginia Code § 11–13–1 *et seq.* (1991) sets forth the State regulations regarding the B & O tax structure. West Virginia Code §§ 11–13–25 and 8–13–5 provide the authority for cities, towns, and villages to impose a business and occupation tax within the guidelines provided by W.Va.Code § 11–13–2, now that the State of West Virginia no longer taxes businesses and occupations. Consequently, although the cases cited above dealt with the State B & O tax, the law discussed in those cases remains applicable to city, town, or village B & O tax. *See* W.Va. Code § 11–13–2 (1985) and § 8–13–5 (1990).

must determine if any exceptions exist under our statute.[3]

The issue of confidentiality in the West Virginia Tax Procedure and Administration Act and tax compromise information was discussed in *Daily Gazette Co., Inc. v. Caryl*, 181 W.Va. 42, 380 S.E.2d 209 (1989). Citing *Spencer v. Yerace*, 155 W.Va. 54, 180 S.E.2d 868 (1971), the Court in *Caryl* concluded that under the theory of statutory construction and legislative intent, the Court must examine W.Va.Code § 11–10–1 *et seq.* "in its entirety in order to determine a purpose of the legislature in enacting this statute." *Id.* 380 S.E.2d at 211.

West Virginia Code § 11–10–5d(a) (1987) provides the general rule for confidentiality of tax information and the exceptions from the general rule:

> Except when required in an official investigation by the tax commissioner into the amount of tax due under any article administered under this article or in any proceeding in which the tax commissioner is a party before a court of competent jurisdiction to collect or ascertain the amount of such tax and except as provided in subsections (d) through (m), it shall be unlawful for any officer or employee of this state to divulge or make known in any manner the tax return, or any part thereof, of any person or disclose information concerning the personal affairs of any individual or the business of any single firm or corporation, or disclose the amount of income, or any particulars set forth or disclosed in any report, declaration or return required to be filed with the tax commissioner....

Thus, the Court in *Caryl* ruled that tax compromise information was both confidential and exempt from disclosure under the Freedom of Information Act.

As we noted in *Caryl*, the confidentiality discussed in 11–10–5d(a) was intended to protect the identity of the taxpayer:

> Indeed, to [open tax returns for public scrutiny] would seriously inhibit conscientious taxpayers from bringing suit to question tax liability. The Legislature clearly intended to protect a taxpayer's right to privacy by enacting the confidentiality provisions found in W.Va. Code § 11–10–5d(a) and § 11–10–5q. This Court is duty bound to enforce that right.

*Id.* at 214.[4] Similarly, the legislative intent to keep confidential the contents of all tax returns, including B & O tax returns, is clear. Based upon our interpretation of W.Va.Code § 11–10–5d(a), we can find no provision which would permit the disclosure of the contents of B & O tax returns. This is not to say, however, that permitting a review of the list of B & O taxpayers would also violate the statute. Although we strongly affirm our holding *Caryl*, which guaranteed taxpayer confidentiality, we also believe a compromise can be reached between the two parties.

Without access to the town's tax files, it would be virtually impossible for the respondents to prove the other taxpayers had not been taxed. Conversely, however, allowing the respondents to peruse the town's tax returns at will would violate the confidentiality requirements of W.Va.Code § 11–10–5d(a) since no exceptions exist which would permit disclosure. However, it would not violate the confidentiality requirements of W.Va.Code § 11–10–5d(a) to permit a review of the roll of B & O taxpayers since every person or company involved in a business or occupation is assumed to pay B & O taxes, and the list

---

**3.** Section 4–202 of the Burnsville Municipal Code (1979) and Section 4–222 of the amended Code provide for the confidentiality of the tax returns. Section 4–202 states that the returns must remain confidential "except in the compliance with judicial order or as may be required by the proper administration hereof...." Section 4–222 provides penalties to Town officials for unlawful disclosure of protected information. In this case, a judicial order exists which, if valid, would permit the disclosure of the

returns in question under the Burnsville Municipal Code.

**4.** We note, of course, that *Caryl* dealt more specifically with tax compromise information, which is subject to its own provisions in W.Va. Code § 11–10–5q as well as § 11–10–5d(a). This case involves the less complex issue of the confidentiality of B & O tax returns.

would contain only the names of the tax-payers, not the actual contents of the tax returns. Consequently, in order to accommodate both parties, we order that a list of those who pay the Town of Burnsville B & O tax be made available for review by the respondents. This list need only contain the names of the persons or entities being taxed: the amount of tax paid is both private and irrelevant in this case. The list shall be compiled and produced by the Burnsville Town Recorder, who should swear under oath that this is a true and complete list. As an added measure of protection, the list should be treated as any confidential material and not leave Judge Cline's chambers. We do not believe compiling a list of only taxpayer names will be overly burdensome or costly given the size of the Town of Burnsville.

Accordingly, we grant the petition for a writ of prohibition as moulded and rule that, while the respondents are precluded from obtaining the Town of Burnsville's complete B & O tax records, they are permitted to review a list of the names of taxpayers who file B & O tax returns with the Town of Burnsville.

Writ granted as moulded.