544 S.E.2d 72

The CITIZENS BANK OF WESTON, INC., A West Virginia Corporation, Bennett D. Orvik, M.D., d/b/a Primary Health Care Assoc., and the Sun Lumber Company, A West Virginia Corporation, Plaintiffs Below, Appellants,

v.

The CITY OF WESTON, A West Virginia Municipal Corporation, Defendant Below, Appellee.

No. 28458.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 9, 2001.

Decided Feb. 9, 2001.

W.T. Weber, Jr., W.T. Weber, III, Weber & Weber, Weston, for the Appellants.

Michael Clay Smith, Margaret D. Smith, Smith & Smith, Hattiesburg, MS, for the Appellee.

Sandra M. Murphy, Michael E. Caryl, Brian A. Price, Bowles Rice McDavid Graff & Love, PLLC, Charleston, for the Amicus Curiae, The West Virginia Bankers Association.

Dennis R. Vaughan, Jr., James V. Kelsh, Of Counsel, Vaughan Law Firm, Charleston, for the Amicus Curiae, West Virignia Municipal League, Inc.

ALBRIGHT, Justice:

Citizens Bank ("Citizens") *et al.*[1] appeals from the February 24, 2000, order[2] of the Circuit Court of Lewis County upholding the Appellee City of Weston's recently enacted Business and Occupation Tax ("B & O tax"). The lower court rejected Appellant's argument that the Weston B & O tax violates the Equal Protection Clause of both the West Virginia Constitution and the United States Constitution.[3] After fully examining the issues raised, we conclude that the lower court did not commit error and accordingly, affirm.

I. Factual and Procedural Background

Effective July 1, 1998, the City of Weston ("City") amended its municipal code[4] to enact an ordinance permitting the assessment of a B & O tax against various city businesses. Under section 27–42 of the Weston ordinance, banking and other financial institutions are to be taxed at a rate of .75% of the "gross income received from interest, premiums, discounts, dividends, service fees or charges, commissions, fines, rents ... royalties, charges for bookkeeping or data processing, receipts from check sales, charges or fees, and receipts from the sale of tangible personal property." The authority for levying a municipal B & O tax comes from West Virginia Code § 8–13–5(a) (1998), which provides that:

(a) *Authorization to impose tax.*—(1) Whenever any business activity or occupation, for which the state imposed its annual business and occupation or privilege tax under article thirteen [§ 11–13–1 et seq.], chapter eleven of this code, prior to July one, one thousand nine hundred eighty-seven, is engaged in or carried on within the corporate limits of any municipality, the governing body thereof shall have plenary power and authority, unless prohibited by general law, to impose a **similar** business and occupation tax thereon for the use of the municipality.

W.Va.Code § 8–13–5(a) (emphasis supplied).

Citizens filed a declaratory judgment action with the circuit court, seeking to have the B & O tax declared unconstitutional on equal protection grounds. In support of its equal protection argument, Citizens asserted that: (1) the rate setting among the various

---

1. Although two additional parties are named Appellants to this appeal, Bennett D. Orvik, M.D., and the Sun Lumber Company, we refer only to Citizens in the opinion because the equal protection violations that have been raised pertain uniquely to the banking industry.

2. *See infra* note 8.

3. *See* W.Va. Const. art. III, § 10; U.S. Const. amend. XIV.

4. Article IV, entitled Business and Taxation Code, was amended to include Chapter 27 for the purpose of enacting a municipal B & O tax.

business classes was performed in an arbitrary and capricious manner and lacked a rational basis; and (2) the B & O tax discriminates against Citizens because a local bank such as Citizens will have to pay[5] a disproportionate share of the total tax compared to the branch banks (United National Bank and Huntington Bank) located in Weston.[6] After a bench trial on November 15, 1999, which included the testimony of several experts,[7] the circuit court upheld the ordinance in its ruling dated February 24, 2000, finding no basis for declaring the Weston B & O tax unconstitutional. Citizens filed motions based on Rules 59 and 52(a), seeking a new trial or, alternatively, an amendment of the findings and judgment of the lower court. By order entered March 22, 2000, the circuit court denied Citizens' motions for relief.

## II. Standard of Review

██ Whether we view the February 22nd or the March 24th order as the order appealed from,[8] the appropriate standard of review is the same. We recognized in syllabus point one of *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995), that "[w]here the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Our reviewing standard for denial of a new trial motion was articulated in *Tennant v. Marion Health Care Foundation, Inc.*, 194 W.Va. 97, 459 S.E.2d 374 (1995):

We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review.

5. We note that Citizens has not yet paid any B & O tax to the City of Weston.

6. Citizens points out that the branch banks often transfer or keep their assets at other locations.

7. Citizens presented testimony, over the objection of the City, from former State Tax Commissioner Charles O. Lorenson, and WVU College of Law tax professor Robert Lathrop.

*Id.* at 104, 459 S.E.2d at 381. Under either of these standards, a *de novo* standard of review applies to the issue of the constitutionality of the B & O tax ordinance.

## III. Discussion

██ The level of scrutiny required to analyze equal protection challenges that involve economic rights was articulated in syllabus point four of *Gibson v. West Virginia Department of Highways*, 185 W.Va. 214, 406 S.E.2d 440 (1991):

" 'Where economic rights are concerned, we look to see whether the classification is a rational one based on social, economic, historic or geographic factors, whether it bears a reasonable relationship to a proper governmental purpose, and whether all persons within the class are treated equally. Where such classification is rational and bears the requisite reasonable relationship, the statute does not violate Section 10 of Article III of the West Virginia Constitution, which is our equal protection clause.' Syllabus Point 7, [as modified,] *Atchinson v. Erwin*, [172] W.Va. [8], 302 S.E.2d 78 (1983)." Syllabus Point 4, as modified, *Hartsock–Flesher Candy Co. v. Wheeling Wholesale Grocery Co.*, 174 W.Va. 538, 328 S.E.2d 144 (1984).

We stated in *Lewis v. Canaan Valley Resorts, Inc.*, 185 W.Va. 684, 408 S.E.2d 634 (1991), that "classifications, including those which involve economic rights, are subjected to the least level of scrutiny, the traditional equal protection concept that the legislative classification will be upheld if it is reasonably related to the achievement of a legitimate state purpose." *Id.* at 691, 408 S.E.2d at 641. This is in accord with federal law, which similarly subjects equal protection challenges involving economic interests to the "rational relationship" test. *See San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 93 S.Ct.

8. Citizens states in the docketing statement filed with this Court that it is appealing from the declaratory judgment order entered on February 22, 2000. Yet, in its petition for appeal, Citizens indicates that it is appealing from the March 24, 2000, order denying its new trial motion.

1278, 36 L.Ed.2d 16 (1973); *accord FCC v. Beach Communications, Inc.*, 508 U.S. 307, 313, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993).

 In syllabus point one of *Town of Burnsville v. Kwik–Pik, Inc.*, 185 W.Va. 696, 408 S.E.2d 646 (1991), we held that:

> The rules for construing statutes also apply to the interpretation of municipal ordinances. There is generally a presumption that an ordinance is valid when it appears that its subject matter is within a municipality's power and it has been lawfully adopted. The burden of proof is on the person asserting that the ordinance is invalid.

Against these principles, we examine the equal protection arguments raised by Citizens.[9]

### A. Rate–Setting and Rate–to–Class Structuring

 Citizens contends that the Weston B & O tax should not be upheld because the rate setting among the various business classes was performed arbitrarily and capriciously and because the rate setting lacks a rational basis. At the center of this contention is Citizens' claim that the inclusion of the term "similar" in West Virginia Code § 8–13–5(a) requires any municipality that institutes a B & O tax to follow the exact same rate-setting and rate-to-class structure that

was imposed by the state under its B & O tax system prior to its repeal on July 1, 1987.[10] Reasoning in a circular fashion, Citizens states: "The rate-to-class comparison with the State's pre–1987 B & O Tax is the crux of the test [sic] whether Weston's B & O Tax is *similar* to the State's pre–1987 B & O Tax as required by W.Va.Code § 8–13–5(a)."

Upon a review of the various statutory versions of both West Virginia Code §§ 11–13–1 [11] (former statute authorizing state B & O tax) and 8–13–5,[12] we cannot reach the conclusion that the statutory term "similar" is in fact a requirement that any B & O tax enacted by a municipality must be identical with regard to rates and rate-to-class structure as the state B & O tax in effect prior to July 1, 1987. We find no basis for accepting Citizens' position that the insertion of the explanatory language referencing the pre–July 1, 1987, state B & O tax governs how municipalities structure their B & O taxes. The term "similar," as it is used in West Virginia Code § 8–13–5(a), does not refer to rates in effect at any given time. Instead, that term merely refers to the nature of the tax—a privilege tax on the exercise of certain businesses. Accordingly, we hold that in granting municipalities the authority to impose a "similar" B & O tax through the provisions of West Virginia Code § 8–13–5(a), the Legislature did not require that the tax imposed by municipalities be identical in

---

9. The remaining two issues briefed by Citizens are not ripe for appeal as it is axiomatic that "[t]his Court will not pass on a nonjurisdictional question which has not been decided by the trial court in the first instance." Syl. Pt. 2, *Sands v. Security Trust Co.*, 143 W.Va. 522, 102 S.E.2d 733 (1958). The other two issues included in the petition for appeal ((1) Citizens' introduction of expert witness testimony; and (2) the failure of the apportionment language in the municipal ordinance to effect parity between the local and branch banks) were never ruled upon by the circuit court. Accordingly, those issues are not ripe for appellate review purposes.

10. *See* W.Va.Code §§ 11–13–2 (1985); 11–13–28 (1985); *see also* 1989 W.Va. Acts, 1st Ex.Sess., ch. 2 (repealing many B & O tax provisions previously rendered "inoperative" as of July 1, 1987, under W.Va.Code § 11–13–28).

11. *See* W.Va.Code § 11–13–1 (1933), (1955), (1959), (1967), (1971), (1972), (1989).

12. An examination of West Virginia Code § 8–13–5(a) demonstrates that the term "similar" has

been a part of West Virginia Code § 8–13–5 from its enactment in 1947. When West Virginia Code § 8–13–5 was first adopted, the statute provided that municipal entities could "impose a **similar** privilege tax for the use of the city, town or village" and contained the proscription that "in no case shall the rate of such municipal privilege tax on a particular activity exceed the rate imposed by the state, exclusive of surtaxes." W.Va.Code § 8–13–5 (eff. June 23, 1947) (emphasis supplied). When the state began phasing out the B & O tax in 1985, the Legislature amended West Virginia Code § 8–13–5 to allow municipalities to continue to impose a local B & O tax on "any business activity or occupation for which the state imposed its annual business and occupation or privilege tax ... prior to" July 1, 1987. W. Va.Code § 8–13–5 (1985). Rather than referring to rates "similar" to those in effect pre-July 1, 1987, the term "similar" appears to refer to a similar kind of tax, i.e. a tax in the nature of a B & O tax.

rate and structure to the state B & O tax in effect prior to July 1, 1987.

This Court's decision in *Kwik–Pik* provides analogous support for our interpretation of the term "similar." Like Citizens, the defendant business in *Kwik–Pik* relied on the term "similar" in asserting that the Burnsville B & O ordinance was invalid because it lacked exemptions identical to those previously provided under the state B & O tax scheme and because the interest and penalty provisions did not parallel those of the former state B & O tax. This Court rejected both of these arguments, finding that the Legislature did not insert those requirements in the language of West Virginia Code § 8–13–5 and that the term "similar" did not require municipal B & O taxes which mirrored the former state B & O tax. 185 W.Va. at 700–03, 408 S.E.2d at 650–53. Accordingly, the town of Burnsville was permitted to enforce its B & O tax ordinance, which varied both in structure and in rates from the state's B & O tax pre-repeal.

■ As a corollary to its argument that the rate-setting and rate-to-class structure must be identical to that imposed under the state B & O tax pre-July 1, 1987, Citizens maintains that only the Legislature has the authority to engage in rate-setting. While Citizens cites to *Lewis* as support for this proposition, that case does not indicate, directly or indirectly, that only the Legislature is authorized to set B & O tax rates. *See* 185 W.Va. at 690–92, 408 S.E.2d at 640–42. The language of West Virginia Code § 8–13–5 is clear in its delegation of legislative power: "the governing body thereof shall have plenary power and authority ... to impose a similar business and occupation tax thereon for the use of the municipality." Moreover, given this Court's decision in *Baldwin v. City of Martinsburg*, 133 W.Va. 513, 56 S.E.2d 886 (1949), there is no question that the Legislative delegation of its taxing power to municipalities under West Virginia Code § 8–13–5 is constitutional. *See* Syl. Pt. 1, *Baldwin*, 133 W.Va. at 513, 56 S.E.2d at 887.

After fully examining this issue, we find no basis for error with regard to the lower court's determination that the rate-setting and rate-to-class structure of the Weston B & O tax do not violate state and federal equal protection provisions. We next examine the second prong of Citizens' equal protection argument.

### B. Disproportionate Impact

■ Critical to understanding any equal protection claim is the recognition that "'equal protection of the law is implicated when a classification treats similarly situated persons in a disadvantageous manner.'" *Lewis*, 185 W.Va. at 691, 408 S.E.2d at 641 (quoting Syl. Pt. 2, in part, *Israel ex rel. Israel v. West Virginia Secondary Sch. Activities Comm'n*, 182 W.Va. 454, 388 S.E.2d 480 (1989)). In this case, the classification at issue is banking or financial institutions. Rather than claiming that the classification operates in an unconstitutional fashion, Citizens argues that Weston's B & O tax violates equal protection principles based upon its disproportionate impact on Citizens. In explanation of this point, Citizens asserts that while it has approximately fifty percent of the banking business in Weston it will be paying seventy percent of the B & O tax due to the fact that its competitors, United National Bank and Huntington Bank, avoid the full impact of this tax because those banks report income that would be subject to this local B & O tax at branches located outside of Weston.[13]

In framing its equal protection argument in terms of the disparate impact on local banks as compared to branch banks, Citizens has crafted an argument that has been considered and rejected by the United States Supreme Court. In *Washington v. Davis*, 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976), the Supreme Court flatly refused to allow a disparate-impact analysis with regard to the equal protection clause. 426 U.S. at 242, 96 S.Ct. 2040.[14] The Court commented

13. According to Citizens, United National Bank reports its income at Parkersburg and Huntington Bank reports its income at Columbus, Ohio.

14. Even before *Davis*, however, Justice Harlan recognized in his dissent to *Douglas v. California*, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963), that under a disparate-impact theory regulatory measures always considered to be constitutional-

in *Davis* that if it were to strike on equal protection grounds every law or regulation that benefits or burdens one classification more than another, every tax, welfare, public service, regulatory, and licensing statute that may be more burdensome to the poor and to the average black than to the more affluent white, innumerable laws could be determined unconstitutional.[15] 426 U.S. at 248, 96 S.Ct. 2040; *see also Personnel Adm'r of Mass. v. Feeney*, 442 U.S. 256, 273, 99 S.Ct. 2282, 60 L.Ed.2d 870 (1979) (acknowledging as "settled [the] rule that the Fourteenth Amendment guarantees equal laws, not equal results"). The Supreme Court of the United States recently addressed this issue in *Lewis v. Casey*, 518 U.S. 343, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996), and observed that: "absent proof of discriminatory purpose, a law or official act does not violate the Constitution 'solely because it has a ... disproportionate impact.'" *Id.* at 375, 116 S.Ct. 2174 (Thomas, J., concurring) (quoting *Davis*, 426 U.S. at 239, 96 S.Ct. 2040).

Citizens admits that it has not located even one case in which an equal protection violation has been found to exist based on a disproportionate impact analysis that is predicated on market share. When questioned by the circuit court for case support for its position, the only authority Citizens cited was *Allegheny Pittsburgh Coal Co. v. County Commission of Webster County*, 488 U.S. 336, 109 S.Ct. 633, 102 L.Ed.2d 688 (1989). That case is inapposite authority as it con-

cerned unequal property valuation and involved the separate constitutional provision found in article X, section 1, which requires uniform taxation according to a property's estimated value.[16] The intentional systematic undervaluation that was found to be violative of equal protection principles in *Allegheny Pittsburgh* is clearly not present here.

■ This Court has previously applied article X, section 1 to the B & O taxation system and held in syllabus point one of *Town of Burnsville v. Cline*, 188 W.Va. 510, 425 S.E.2d 186 (1992), that

"Section 1 of Article X of the West Virginia Constitution does not require that the same rate of business and occupation tax be applied to all classes of business activity and callings to which the tax is applied. The Legislature may prescribe different rates for different businesses and callings, but the rate of taxation must be uniform and equal within each classification." Syllabus point 5, *Armco, Inc. v. Hardesty*, 172 W.Va. 67, 303 S.E.2d 706 (1983).

The provisions of article X, section 1 are not implicated in this case as there is no contention that a uniform rate of taxation is not applied to all the banking institutions affected by the Weston B & O tax.

■ Upon review, we find no basis for Citizens' position that the Weston B & O tax violates both state and federal equal

---

ly valid, such as sales taxes, state university tuition, and criminal penalties, would have to be struck down. 372 U.S. at 361–62, 83 S.Ct. 814. Justice Harlan opined:

> Yet I take it that no one would dispute the constitutional power of the State to levy a uniform sales tax, to charge tuition at a state university, to fix rates for the purchase of water from a municipal corporation, to impose a standard fine for criminal violations, or to establish minimum bail for various categories of offenses....
>
> Laws such as these do not deny equal protection to the less fortunate for one essential reason: the Equal Protection Clause does not impose on the States "an affirmative duty to lift the handicaps flowing from differences in economic circumstances."

372 U.S. at 361–62, 83 S.Ct. 814 (Harlan, J., dissenting) (quoting *Griffin v. Illinois*, 351 U.S.

12, 34, 76 S.Ct. 585, 100 L.Ed. 891 (1956)) (Harlan, J., dissenting).

**15.** In this same vein, Justice Frankfurter observed in his concurrence to *Griffin*, that "the equal protection of the laws [does not] deny a State the right to make classifications in law when such classifications are rooted in reason," and that "a State need not equalize economic conditions." 351 U.S. at 21, 23, 76 S.Ct. 585.

**16.** In syllabus point two of *Capitol Cablevision v. Hardesty*, 168 W.Va. 631, 285 S.E.2d 412 (1981), we held that:

> The constitutional requirement of equal and uniform taxation means that as to classes of property, businesses, or incomes there shall be uniformity of taxation and a tax upon all businesses of the same class, which is uniform as to that class of business, is not unconstitutional.

protection provisions. Like the United States Supreme Court, we hold that the principles of equal protection are not invoked solely because a law, properly enacted, has a disproportionate impact. Without proof of a discriminatory purpose underlying the law's enactment, a disproportionate impact on one classification will not on its own create a violation of this state's equal protection provision. *See* W.Va. Const. art. III, § 10.

Having found no state or federal equal protection violation inherent in the Weston B & O tax, we affirm the decision of the Circuit Court of Lewis County.

Affirmed.